WESTERN UNION TELEGRAPH COMPANY v. BRIDGET MULLINS.

FILED APRIL 5, 1895.    NO. 6246.

1. **Pleading.** Where a petition states a case entitling the plaintiff to judgment for any amount, it is good against demurrer, or an objection to the introduction of evidence on the ground that it does not state a cause of action.

2. **Master and Servant.** A master is not liable for the acts of his servant committed outside the line of his duty and not connected with the master's business.

3. **Telegraph Companies:** ERRONEOUS DIRECTIONS OF AGENT: DAMAGES. At the instance of the plaintiff one P. sent a telegraphic message to the chief of police at Seattle, Washington, inquiring whether plaintiff's husband was there employed by a certain company. P. left orders to deliver the answer to the plaintiff. The telegraph company delivered to the plaintiff a message dated Aspen, Colorado, and saying: ".H. is here. Come at once. Will meet you at Glenwood Springs. Answer here if coming." In fact this message was not an answer to the plaintiff's and had no relation thereto. The plaintiff went to the telegraph office and asked the clerk to write a message in reply. The clerk asked where it should be sent. Plaintiff replied to Seattle. The clerk said, "This is from Glenwood Springs." Plaintiff inquired, "Is not this the answer to the dispatch which P. sent to Seattle?" The clerk said, "Certainly it is the answer. They have got him at Glenwood Springs and want you to meet him there." Plaintiff then asked if Glenwood Springs was on the route to Seattle and if it was far from Seattle. The clerk said it was on the route and he did not think it was very far from Seattle. Plaintiff then went to Seattle, but did not find her husband. The expense of the trip to Seattle and the loss of time caused thereby were the damages allowed by the jury.

*Held*, (1) that the clerk's statement that Glenwood Springs was on the route to Seattle and not far therefrom was not within the line of his duty or the apparent scope of his employment, and the company was not liable for the consequences of that statement; (2) that plaintiff's going to Seattle was not a consequence reasonably to be considered as arising according to the usual course of things from the delivery to plaintiff by the telegraph company of the wrong message and that, therefore such damages could not be recovered.

ERROR from the district court of Lancaster county. Tried below before TIBBETS, J.

*Harwood, Ames & Pettis*, for plaintiff in error, cited: *Western Union Telegraph Co. v. Foster*, 64 Tex., 220; *Cincinnati, H. & I. R. Co. v. Carper*, 112 Ind., 26.

*Davis & Hibner, contra.*

IRVINE, C.

The defendant in error, as plaintiff in the district court, recovered judgment against the plaintiff in error for $167.20 damages which she claimed to have sustained because of the telegraph company's delivering to her, as an answer to a message by her sent, one which was not in fact an answer thereto. The petition alleges, in brief, that on or about the first day of October, 1891, the plaintiff employed one Pound to employ the telegraph company to transmit a message to Seattle, Washington, inquiring as to the whereabouts of plaintiff's husband, and the plaintiff paid in advance the charges for transmitting said message; that Pound instructed the telegraph company to deliver to plaintiff the answer; that the defendant negligently and carelessly delivered to plaintiff a telegram, claiming that the same was in answer to the message sent by her when in fact it was not in answer thereto, and had no relation thereto; that the plaintiff paid the telegraph company the charges on the second message; that by reason of the

premises the plaintiff was subjected to expense, loss of time, and annoyance, to her damage, etc. A general demurrer was filed to this petition and overruled, whereupon the defendant answered, and on the trial again raised the question of the sufficiency of the petition by objecting to the introduction of any evidence for the reason that the petition did not state a cause of action. This objection was overruled, and the overruling thereof is assigned as error. On this point the district court ruled correctly. The telegraph company contends that the petition was defective in that it did not aver what the messages were and how the damage arose. The petition does aver, however, that a message was delivered to the plaintiff purporting to be an answer to her message; that in fact it was not an answer thereto, and that plaintiff paid the charges on the latter message. The plaintiff, therefore, stated a cause of action at least for the recovery of the amount so by her paid. Indeed, the answer admits these facts and admits liability for the charges on the second message, in language more courteous than technical, as follows: "The amount of which payment, if plaintiff will kindly designate it in her petition, will be cheerfully refunded by said defendant, who hereby tenders the same in court and confesses judgment for the same." The averments referred to were, therefore, sufficient to protect the petition against a general demurrer or an objection on the trial to the introduction of evidence on the ground that no cause of action was stated.

At the close of the plaintiff's testimony the defendant asked the court to instruct the jury to return a verdict for the defendant. This motion was bad for the same reason as the objection to the evidence. A cause of action for some amount was pleaded and confessed.

Complaint is made in the briefs of the giving of two instructions. The only assignment of error relating thereto is directed *en masse* against instructions from 1 to 8 inclusive. Most of these are manifestly correct, the third

being merely a quotation of the statute in regard to the liability of telegraph companies for mistakes in transmitting messages. The assignment of error referred to is therefore bad. There are several assignments of error not referred to in the briefs and these must therefore be deemed waived.

The only assignments remaining for notice are that the verdict was not sustained by sufficient evidence and that the damages allowed were excessive. The evidence is brief and discloses no conflict. In 1891 the plaintiff's husband ceased writing to her and she employed A. L. Pound, a detective, to make search for him. Pound sent by the defendant company a message to the chief of police at Seattle, Washington, inquiring if Daniel P. Mullins was employed by the Seattle Dry Lumber Company. Pound directed the clerk of the telegraph company to deliver any answer which might be received to the plaintiff. The next day a message was delivered to the plaintiff as follows (omitting printed heading and check marks):

"Dated ASPEN, COLO., —— 21.

"*To A. L. Pound:* H. is here. Come at once. Will meet you at Glenwood Springs. Answer here if coming.

"P. H. FITZPATRICK."

The following day the plaintiff went to the telegraph office and requested a person she calls the "operator" to write a message she wished to send in answer to the one received. What then occurred she relates as follows : " The operator asked me the question, 'Where do you wish to send it ?' I said, 'To Seattle.' He replied, 'This is from Glenwood Springs.' I replied, 'How is that ? Is not this the answer to the dispatch which Mr. A. L. Pound sent to Seattle?' He said, 'Certainly it is the answer.' I said, 'I don't understand it.' He said, 'Why, they have got him at Glenwood Springs, and want you to meet him there.' I then asked him if that was on the route to Seattle, and he said, 'Yes.' I asked him how far Glenwood

Springs was from Seattle, and he said he did not know ex-
actly, but that it was not very far." The plaintiff then
started for Seattle, but before arriving there learned that
Glenwood Springs was not on the route. She went on to
Seattle and remained there some time. The damages and
only damages which were proved consisted of her traveling
expenses to and from Seattle, her hotel bill, and thirty-five
days' lost time, the value of which she places at $1 per day.
The foregoing is all the material evidence. Nearly all the
remainder arose from a quibble as to her stating that her
conversation was with the operator. The evidence leaves
it quite clear that her conversation was really with the
counter clerk, and that the use of the word "operator" by
her was the result merely of carelessness or ignorance.
Does this evidence sustain the verdict rendered? There
can be no doubt that had the plaintiff gone to Glenwood
Springs on a fruitless errand the company would have been
liable for the expenses thus incurred. The telegram de-
livered to her was of such a nature as on its face to apprise
the company that the natural and probable consequences of
its delivery would be such a journey on her part. But it
is equally clear that a trip to Seattle on the delivery to the
plaintiff of a message from Aspen, Colorado, directing her
to go to Glenwood Springs would not be a consequence
which might fairly and reasonably be considered as arising
according to the usual course of things from the wrong of
the telegraph company, nor could it reasonably be sup-
posed to have been in the contemplation of the parties
as the probable result of the telegraph company's act.
In order to connect the trip to Seattle as a result of
the delivery of the Aspen message it is necessary to treat
the statements to the plaintiff by the counter clerk as
binding upon the company. It is familiar law that a mas-
ter is not liable for the acts of his servant unless those
acts have been done in the line of the servant's duty and
in furtherance of the master's business, or, as sometimes

expressed, the acts must be within the servant's apparent scope of employment. We have no doubt that the clerk's assurance to the plaintiff that the message delivered to her was an answer to that sent on her behalf might be said to have been within the scope of the clerk's employment; but this statement could not have induced her to go to Seattle. Such action, if induced by the transaction at all, must have been due to the clerk's statement that Glenwood Springs was on the route to Seattle and not very far therefrom. Had this statement been made by the clerk in regard to the sending of the message, and had it induced her to send a message which thereby went astray, or otherwise caused damage, the clerk's act might probably be charged to the company. Had she, instead of inquiring at the telegraph office, gone to a railway ticket agent and bought a ticket to Seattle on the faith of the statement that Glenwood Springs was on the route and not far therefrom, the railroad company might be liable, because the giving of directions of such a character would be connected with the sale of railroad tickets; but it could not be any part of the telegraph clerk's business to give instructions in geography to a person contemplating a trip by rail, and we cannot see how the telegraph company can be charged with the consequence of misinformation thus given.

The general principle governing the case is well settled; the application of the principle is not always easy. In *South & North Alabama R. Co. v. Huffman*, 76 Ala., 492, it was held that a railroad company was liable for erroneous advice and directions given by a ticket agent in regard to the train which the plaintiff should take. The doctrine of that case seems sound and would govern the case we have supposed of a misdirection by the telegraph clerk resulting in missending a message, or of a ticket agent in sending a passenger astray. The Alabama case cites a large number of cases, only three of which, however, are at all in point. Two of these are cases where it was held that a railroad was liable for

injuries sustained by a passenger in alighting from a moving-train by the direction of the conductor. (*Lambeth v. North Carolina R. Co.*, 66 N. Car., 494; *Georgia Railroad & Banking Co. v. McCurdy*, 45 Ga., 288.) The third is the case of *Burnham v. Grand Trunk R. Co.*, 63 Me., 298, where a railroad company was held liable for ejecting a passenger from a train because his ticket was good only for the day issued where the passenger had stopped over on his route, relying on a statement of the ticket agent that the ticket permitted him to do so. This case also illustrates the hypothetical cases we have proposed. In all the cases we have cited the act was one clearly within the servant's line of employment and had direct reference thereto. On the other hand, in *Western Union Telegraph Co. v. Foster*, 64 Tex., 220, it was held not to be within the line of employment of a telegraph company's receiving clerk to correct at the request of the sender a mistake the latter made in writing a message, and that the company was, therefore, not liable for the consequences of sending the message as written without the correction. This is a much stronger case than that we are considering, and we would hesitate, perhaps, to follow it entirely; but it well illustrates the general principle that when an agent performs acts entirely outside the line of his employment the principal is not liable therefor. We think that the information given by the clerk that Glenwood Springs was not far from Seattle and on the way thereto, was wholly foreign to the master's business, and as this is the only evidence connecting plaintiff's trip to Seattle as a consequence of the misdelivery to her of the Aspen message, it follows that there was not sufficient evidence to establish the damages on which the verdict must have been grounded.

REVERSED AND REMANDED.

RAGAN, C., dissenting.