[No. 6852.]

THE PEOPLE EX. REL. v. JEFFERSON DISTRICT COURT.

1. **Courts—Inherent Powers**—Every court has an inherent power to enforce its judgments and decrees by proper directions to its ministerial officers, and is under duty to do it. The court has no discretion to refrain from the exercise of this jurisdiction when invoked by a suitor who, as matter of right, is entitled to have enforcement of the judgment, decree or order. And the exercise of this discretion will be enforced by a mandamus when the proper relief is denied by the inferior court.—(388)

2. **Mandamus—Original Jurisdiction of the Supreme Court** —The relator, by proceedings under the Eminent Domain act, in the district court had obtained an order investing it with title to certain lands for a reservoir site, and entitling it to immediate possession. It had paid to the parties entitled the damages awarded against it, and the costs of the proceeding, and these moneys the owners of the lands and the respondents in the condemnation proceeding had accepted. Nevertheless, they refused to surrender the possession, and the district court, on application made, refused to award a writ of possession or in any manner enforce the order given in the condemnation proceedings. A peremptory writ of mandamus was awarded against the district court and the clerk thereof.—(387-391)

*Original Proceedings in Mandamus.*

Mr. MILTON SMITH, and Mr. CHARLES R. BROCK, for relators.

Mr. J. W. BARNES, and Messrs. GOUDY & TWITCHELL, for respondents.

Mr. JUSTICE BAILEY delivered the opinion of the court:

The relator, The Farmers' Reservoir and Irrigation Company, on June 15, 1907, in the district court of Jefferson county, had judgment in condemnation for title to and possession of, for reservoir purposes, the real property in controversy, having paid to the various owners thereof for such title and possession $33,260.00, as damages, and the further sum of $239.63 costs of the proceedings, or an aggre-

gate of $33,499.63. This money was accepted by the property owners, and the judgment in condemnation acquiesced in as final, no appeal having been taken therefrom, and no steps whatsoever proposed to dispute, question, deny, review or qualify it. No one in interest complains of or desires a review of that judgment. The relator promptly paid every cent assessed against it and in every respect complied with the terms of the decree. Nothing remains to make of the condemnation proceedings, and of this application, a closed incident, except the surrender of the possession of the property, according to the terms of the award. However, the owners did not vacate said premises, but remained in possession of portions thereof, and decline to surrender same, and, despite the condemnation judgment, stoutly maintain that they have a legal right to such occupancy and possession.

On March 27, 1909, the district court of Jefferson county, Hon. Charles McCall, judge, one of the respondents here, on application of the relator for an order directed to the sheriff of said county commanding him to put it into possession of the land so condemned and paid for, denied such relief, and these original proceedings in mandamus followed, wherein a writ is prayed from this court to the district court and the judge and clerk thereof, directing the issuance of an order from the court below to the Jefferson county sheriff, as originally moved.

The proposition here is, whether it was and is the plain and unquestioned duty of the court below, and of its presiding judge, to enter the order required by this alternative writ?

The right of the relator to have immediate and exclusive possession of this property is so clear that it may not for an instant be doubted. To have that question settled was the very gist of the condemna-

tion proceedings. The matter was determined favorably to the relator and for such possession it has paid the price, and which price those who now seek to retain the property have safely in their pockets. The situation is simply an exemplification of the old story of one trying to keep his cake and eat it too. This is impossible as a physical fact, and so is the thing attempted here equally impossible and inconsistent as a legal proposition. The former owners frankly admit that the relator is entitled to possession under the decree. But they, in effect, say, "While it is true you have paid for the possession, still we are of opinion that you really are not in need of it just now and therefore we propose to continue to occupy and possess the land ourselves." Such is the contention that the court below apparently upheld. Instead of issuing a proper writ for the prompt and efficient enforcement of its clear and unequivocal decree, without jurisdiction or authority, as it seems, it attempts by its order, upon the relator's application for such writ, to modify the force and effect of that solemn and binding judgment, in which all parties acquiesced. The duty of the court to grant an order for the writ prayed was and is clear, and the right of the relator to have it equally plain. Its issuance involves the exercise of no judicial discretion; it was and is an order to which the relators were and are entitled as a matter of right. It is a mockery of justice to give one a judgment and then deny him the means of its enforcement. Every court has the inherent power and authority, and upon it rests the duty, of enforcing its own judgments and decrees by proper orders and directions to ministerial officers to that end. Were it otherwise, judgments and decrees of courts would be empty and meaningless things, just as this judgment and decree in condemnation is, if incapable of enforcement. The re-

lators have no other plain, speedy or adequate remedy, and the court below has no discretion whatever, except to issue the writ prayed for by the relator, and to which prayer that court turns an unheeding ear. With equal propriety the clerk might refuse to a judgment creditor an execution on a money judgment, and the court, upon application for an order to the clerk for its issuance, might deny such relief, on the theory that the judgment creditor was not in need of the money, being in affluent financial circumstances, and the judgment debtor sore pressed and in financial straits. The relator is as well entitled to an order of court for the prompt and efficient enforcement of this decree, as the judgment creditor would be to have an execution in the case illustrated. The right to the relief sought is clear and indubitable. The duty upon the court to enforce its own judgment, which is now being openly defied, and thus prevent a miscarriage of justice, is equally certain. Unless such relief be given the result is an absolute denial of justice.

The question of the character and quality of title is not involved. The right of possession is the sole question here for consideration. The question of necessity for present possession was determined in the condemnation proceedings, and that judgment is conclusive upon this court, as it is upon the court below. Should the relator, after having secured possession of the premises, fail within a reasonable time to make use thereof for the purposes for which they were condemned, then doubtless a direct action to have the character and quality of the title determined would lie. But no such question may be heard or determined in these proceedings at this time, or in the manner attempted by the court below.

Merrill on Mandamus, sec. 186, says:

"The writ of mandamus has been used most ex-

tensively to control and correct the action of inferior courts. It is used not only to restrain their excesses, but also to quicken their negligence and obviate their denial of justice. When a duty is imposed by law upon a court, a mandamus from a higher court is the proper means to compel the discharge of such duty. When such duty is so plain in point of law and so clear in matter of fact that no element of discretion is left as to the precise mode of its performance, such duty is ministerial, and a writ of mandamus to compel the performance of such duty will specify the exact mode of performance.''

The above and foregoing pronouncement so completely and perfectly covers the situation disclosed by the pleadings here that it should set at rest all doubt as to the propriety of the issuance of the writ in the case at bar.

Where one has a clear and definite judgment, which needs no construction, it is an absurdity and a denial of justice to hold that it may not be enforced, or that the court may rightfully refuse proper writs or orders to secure such result. If such action be permissible it is apparent that the judgment holder is helpless and without a remedy. It is equally absurd to hold that he must resort to the procurement of another judgment of no higher or more helpful character, the enforcement of which might on demand, with equal propriety, be denied him. It must be clear, in view of the order already made by the court below, that no merely executive or ministerial officer will or should now act contrary to that order, hence relief can only properly be had by direction to that court and to the judge thereof.

This court has never held, and never will hold, as we now view the matter, that the writ of mandamus may not go in original proceedings even in purely private matters, where failure to award it leaves a

litigant without remedy and results in a denial of justice. It was to afford relief in just such cases that the authority to supervise the action of inferior courts was by the constitution vested in this court. Whether the writ is proper in original proceedings here must depend upon the peculiar facts in each particular case. We are clearly of the opinion that the petition here presents a proper showing for the application of the rule. The announcements of this court are to the effect that the writ should not go in private matters, except in cases presenting some special or peculiar exigency.—*Wheeler v. Northern Colorado Irr. Co.,* 9 Colo. 248: *Keady v. Owers et al.,* 30 Colo. 1.

In *Wheeler v. The Northern Colorado Irrigation Company, supra,* at page 255, the court said:

"As above suggested, rare instances may occur when, owing to some peculiar emergency or exigency, although the sovereign power, prerogatives or franchises of the state are only indirectly drawn in question, a refusal here to take original jurisdiction would practically amount to a denial of justice. In such cases this court will sometimes issue its original process. Whether a sufficient emergency exists will depend upon the circumstances attending each particular case, and will be determined in connection with each application for original relief, as presented. But in general the view above announced will be strictly adhered to, and unless a cause directly presents as the subject-matter of the proceeding one of the grounds named, its inception will be consigned to the jurisdiction of subordinate tribunals."

How can a more peculiar, special or extraordinary situation be imagined, in a legal controversy, than is disclosed by the record here? The relator company brings suit in condemnation against the owners for possession of the property in controversy,

and at the end of the litigation is awarded, definitely and unequivocally, possession of the same for the purposes for which that possession is sought; it is mulcted in damages and costs in the aggregate of $33,499.63, promptly pays over that sum, which is received and retained by the owners of the property, who accept the judgment as final and conclusive, and who thereupon declare that the company shall not have the thing they have sold and which it bought and paid for, and which the decree so specifically gives it; and the very court which rendered the judgment declares that it may not now be enforced. The proposition is so sharply in conflict with every consideration of common justice and fair dealing that it ought not to be judicially approved. The alternative writ should be made peremptory, and it is accordingly so ordered.     *Peremptory writ granted.*

Decision *en banc.*

Mr. Justice Gabbert not participating.

Mr. Justice Musser and Mr. Justice Campbell dissenting.

Mr. Justice Musser dissenting.

I cannot consent that the alternative writ be made peremptory. In the condemnation proceedings below a jury was selected to determine and appraise the damages or compensation to be allowed, and that jury returned its verdict into court. Sec. 1725 Mills' Ann. Stats. provides: ''The judge or court shall, upon such verdict, proceed to adjudge and make such order as to right and justice shall pertain, ordering that petitioner enter upon such property and the use of the same, upon payment of full compensation, as ascertained as aforesaid; and such order, with evidence of such payment, shall constitute complete justification of the taking of such property.''

The order sought to be coerced in this proceed-

ing is either within or without the decree which was rendered pursuant to that section. If the order now sought from the lower court is within the decree, either expressly or by necessary implication, then for the court to issue it now would be doing what has already been done. In such a case all that petitioners need do is to enforce the decree that they have in an ordinary way. If the order now sought from the lower court is without the decree, then at the time it was not "such an order as to right and justice shall pertain," or else it was purposely or inadvertently omitted by petitioners. Such an order as to right and justice shall pertain is to be made or omitted in the discretion of the court. If made now it would be a modification of the decree, if such an order is now without the decree. In such a case as the one before us the discretion of the court ought not to be controlled, nor its final decree modified in a proceeding like this.

The right to the order now sought was just as strong on the day on which the decree was entered as it is now. The usefulness of such an order is perhaps more apparent now than then. If the petitioners, either purposely or inadvertently, omitted to incorporate in the decree, either expressly or by ncessary implication, the order which they now seek from the court below, it was their folly. This court ought not to use its extraordinary powers to correct the follies of litigants. True, if the petitioners are entitled to the possession of the premises and are deprived of such possession, they ought to have possession, but that is no reason why this court should give them possession speedier than the ordinary proceedings and processes of courts will do so. It is far more important that the powers of this court be not abused, than that litigants speedily recover possession of premises, or recover possession at all.

The alternative writ should be quashed and the petition dismissed.

I am authorized to say that Mr. Justice Camp-bell concurs in this dissent.