CENTRAL NEBRASKA PUBLIC POWER AND IRRIGATION DISTRICT, APPELLEE, v. CHARLES F. WALSTON ET AL., APPELLANTS.

299 N. W. 609

FILED JULY 25, 1941. No. 31031.

*Cloyd E. Clark,* for appellants.

*R. O. Canady, P. E. Boslaugh* and *R. H. Beatty, contra.*

*Wright & Wright* and *Gerald J. McGinley, amici curiæ.*

Heard before SIMMONS, C. J., ROSE, EBERLY, CARTER, MESSMORE and YEAGER, JJ.

EBERLY, J.

This is an appeal prosecuted by Charles F. Walston *et ux.,* defendants, from the judgment of the district court for Gosper county, overruling their demurrer to the amended petition of the plaintiff filed in the above entitled cause.

To summarize the allegations of this petition, it may be said: That the plaintiff, the Central Nebraska Public Power and Irrigation District, "is and has been since about the first day of November, 1933, a corporation organized, created and existing under and by virtue of Senate File 310 of the laws of the state of Nebraska for the year 1933, which as amended is now section 70-701 to section 70-717, inclusive, of the 1939 Cumulative Supplement to the Compiled Statutes of Nebraska for 1929; that it is a public and municipal corporation and a political subdivision of the state of Nebraska with its principal place of business in the city of Hastings, Adams county, Nebraska," and that the constating act under which it is organized vests it with the right and power of eminent domain. Further, it was alleged "That the plaintiff was organized for the purpose of constructing, maintaining and operating appropriate works to irrigate lands in the state of Nebraska, and for the construction, maintenance and operation of hydroelectric plants and a hydroelectric system for the generation, transmission and distribution of electrical energy to the inhabitants and users thereof within the state of Nebraska; that plaintiff is and has been since about the first of November, 1935, engaged in the construction of works of internal improvement consisting of an irrigation system and works sufficient and appropriate to irrigate about 250,000 acres of land in Gosper, Phelps, Kearney and Adams counties in the state of

Nebraska, and hydroelectric plants and a hydroelectric system for the generation, transmission and distribution of electric energy to the inhabitants and users thereof within the state of Nebraska; that all of the works being constructed and which have been constructed by the plaintiff as aforesaid are works of internal improvement, and the District was organized and exists for the purpose of the construction, maintenance and operation thereof; that the works of the District consist and will consist of an on-river or channel dam across the North Platte river about three miles west of the town of Keystone of a nature and character sufficient to create a reservoir for the storage and will store a maximum of two million acre-feet of water, diversion works in the Platte River near the confluence of the North Platte and South Platte rivers, and in the Platte river south and a short distance east of the city of Lexington, Nebraska, and regulating reservoirs, three hydroelectric power plants on the main supply canal, laterals and all things incidental, necessary and proper for a complete system to transport and furnish water for irrigation, and to generate, transmit and distribute electrical energy; that said District has complied with all the requirements of the laws of the state of Nebraska and has secured authority and license from the state to construct said works and it has secured and has a grant of water rights from the state of Nebraska for appropriation, use, and storage of waters of the North Platte and Platte rivers proper and sufficient for the operation of all of its said works as aforesaid; that the works of the District necessary and to be utilized in the irrigation of lands in Nebraska as aforesaid have their western terminus in the North Platte valley in Keith county, Nebraska, and they extend to, into and through a part of Adams county, Nebraska; that the works of the District to be used and utilized in the generation, transmission and distribution of electrical energy have their western terminus in the North Platte valley in Keith county, Nebraska, and extend eastward through south central Nebraska with the eastern terminus in or near the city of Lincoln, Lancaster county, Nebraska;

that a part of the said works of the District have been completed and have been and are being used to irrigate land and to transport and distribute electric energy; that the total cost of the said works of the District when completed will be in excess of $25,000,000, and the works of the District are and will be permanent and perpetual, and the operation and maintenance of said works to perform the functions and services for which they are designed and constructed will require the continuous, perpetual and exclusive occupation, control and ownership of all of the locations upon which said works are located."

It was alleged further "That the defendant, Charles F. Walston, was at the time of the commencement of the condemnation proceeding on April 23, 1938, hereafter referred to, the owner in fee simple of the Northwest Quarter (NW¼) of Section 6, Township 8, North, Range 22, West of the 6th P. M., in Gosper county, Nebraska," subject to the liens of certain mortgages duly described in this amended petition, "and he was and is the husband of the defendant, Nettie Walston, who has no interest in said land except such as results from said marital relationship; that the defendants have at all times herein referred to actually resided upon and occupy said land; that it was necessary for the plaintiff in the construction of its said works of internal improvement to acquire and have said real estate and the whole thereof in fee simple, to be used, and it will be used by the District, together with adjoining real estate, as a regulating reservoir, and for that part of the system and works of the District known as the Johnson regulating reservoir; that said regulating reservoir will have a capacity of 54,000 acre-feet of water, and will be used for the purpose of regulating an even flow of water through the turbines of the electric generators of the District which will be located in the Northeast Quarter (NE¼) of Section 4, in Township 8, North, Range 22, West of the 6th P. M., and the Northeast Quarter (NE¼) of Section 7, Township 8, North, Range 21, West of the 6th P. M., in Gosper county, Nebraska, and for the storage of water which will be used

for the irrigation of land in Gosper, Phelps, Kearney and Adams counties, Nebraska; that the plaintiff was unable to procure said land by the voluntary purchase thereof from the owners. That on the 23d day of April, 1938, the plaintiff, as it was entitled and authorized to do, commenced proceedings in the county court of Gosper county, Nebraska, for the appropriation of said land in fee simple by the District by the exercise of the right and power of eminent domain;" that it filed with the county court of Gosper county in due and proper form its petition and application to appropriate the northwest quarter of section 6, township 8 north, range 22 west of the 6th P. M., which petition and application set forth "That it is necessary for said District, the petitioner herein, to acquire and have said land, and the whole thereof, to be used and it will be used by the District, together with adjoining real estate, for that part of the system and works of the District known as the Johnson Regulating Reservoir; that said Reservoir will have a capacity of 54,000 acre-feet of water, and will be used for the purpose of regulating an even flow of water through the turbines of the electrical generators of the District, located in the Northeast Quarter of Section 4, Township 8, North, Range 22, West of the 6th P. M., and in the northeast quarter of Section 7, Township 8, North, Range 21, West of the 6th P. M., in Gosper county, Nebraska, and as a storage for water which will be used for the irrigation of land in Gosper, Phelps, Kearney and Adams counties, Nebraska." (A true copy of such county court petition is attached and made a part of plaintiff's amended petition as exhibit 1.) It was further alleged that appraisers were appointed by the county judge pursuant to such petition, after due and proper notice, and after due hearing and investigation such appraisers assessed and fixed the total amount of damages of those having an interest in the northwest quarter of section 6, township 8 north, range 22 west of the 6th P. M., in Gosper county, Nebraska, at the sum of $13,512. (A true copy of this report of the appraisers is made a part of the amended petition filed herein as exhibit 2.) The petition

further set forth that an appeal was prosecuted by the plaintiff district from the appraisement as made; that issues therein were submitted to a jury, who, after hearing the evidence offered by the parties, returned a verdict in favor of the defendant Walston for the sum of $14,580, and that said amount including interest and costs accrued was fully paid by the Central Nebraska Public Power and Irrigation District on June 29, 1939, and the amount ordered and adjudged to be paid Charles F. Walston has been received and accepted by him and said judgment duly and finally released; "and because thereof, said land has been wholly and finally appropriated in fee simple by the plaintiff in this case for permanent and perpetual use for which it was condemned as a part of the works of internal improvement of the District as aforesaid; that the law under which the District was created provided that any real estate acquired by the District shall be by title in fee simple; that the full value of said land has been paid by the District and received by the owner thereof; that the land involved herein is located in about the center of the regulating reservoir of which it will form a part, and from the time of the completion of all of the works of the District, it will be permanently and continuously flooded and inundated by water to a great depth. That the cost of the construction of the works of internal improvement of the plaintiff as aforesaid is provided by funds furnished as a loan and grant to the plaintiff by the Public Works Administration of the United States; that it is and has been one of its requirements that all real estate required for the works of said project shall be secured by fee simple title except right of way for transmission lines and irrigation laterals of minimum capacity; that as a condition of securing the approval of and financing from the Public Works Administration sufficient to permit the construction of the works of the District, including the land acquired for such purpose, it was necessary for the District to acquire the title to all real estate by fee simple title, except as above stated, and because thereof the plaintiff has in all condemnation proceedings asserted the neces-

sity for and condemned by absolute title, except in the instances above set forth. That it was and is necessary for the plaintiff to have the Northwest Quarter (NW¼) of section 6, township 8, north, range 22, west of the 6th P. M., Gosper county, Nebraska, as a part of its said works of internal improvement; that it is and will be permanently and perpetually a part of the Johnson Canyon Regulating Reservoir of the plaintiff, which has and will have a shore line of approximately eighteen miles, a water surface of 2,800 acres, a storage capacity of 54,000 acre-feet of water, a maximum depth of 45 feet, and is an integral part of the canal system of the plaintiff and essential to the successful operation of the said project of the plaintiff in supplying irrigation water to irrigate more than 200,000 acres of land, and in the generation of firm power; that the reservoir during normal operation will remain at a constant level, but it can and will be drawn down to meet any necessity of operation if for any reason the parts of the canal and reservoir system above or to the west of this reservoir are temporarily cut off from the rest of the project; that the Johnson Canyon Reservoir will be able to supply sufficient water to meet the guarantees of the plaintiff to irrigators for a period of approximately twenty-five days, and to supply the means to produce firm power for an equal length of time; that the water in this reservoir will be directly above all of the irrigated area and directly above two-thirds of the power producing installation of the plaintiff, and without this reservoir temporary fluctuations in the supply of water resulting from causes beyond the control of the plaintiff would interfere with its ability to successfully carry out its purposes and operations. That none of the land within the area of this reservoir will ever be suitable for agricultural or commercial use, or for any use except as a part of the reservoir; that before the land in the reservoir is submerged it must be cleared of all vegetation and structures, and during all normal operation, since this will be a constant, level lake under ordinary conditions, this land will

be inundated; that it is necessary for the plaintiff to have absolute and exclusive control of the tract of land above described because of the nature of the lake to be created; that said land is in the path of the inlet, and the incoming water from the canal will cause eddies and undercurrents, and will carry floating and submerged débris, and the plaintiff must have absolute and continuous control of the premises to protect the general safety of the public; that a small part of said land will approach the shore line of the reservoir, and during some parts of each season the canal will carry an appreciable amount of sediment into the reservoir which will deposit itself along or near the shore line of the lake and will create a mucky or boggy condition, and if there should be a draw-down of the reservoir after such a deposit, the deposited material will remain treacherous and dangerous to stock entering thereon for a long period of time, and will make it impossible to use the part of the reservoir area which may be exposed for any useful purpose; that no part of the reservoir area will be suitable for the planting or raising of any crop under any condition, and could not be permitted because of the fact, in addition to the foregoing, that the root structure of crops in any part of the reservoir area would cause a piping condition to exist in the underground soil, which would result in seepage and would defeat the purpose for which the reservoir is constructed by the plaintiff, and would subject it to great and numerous claims for damages; that any disturbance of the surface of the basin of the reservoir must be and will be controlled scientifically for the purpose of preventing seepage; that because of the facts herein alleged it was proper and necessary that the plaintiff acquire the fee simple title to said land, which it did do by the proceedings hereinbefore had for the appropriation and taking of said land, and it is now the absolute owner thereof, and no title or right less than a fee simple title to said land would conform to the necessities of the plaintiff in reference thereto. That the defendants and each of them now claim and assert that the plaintiff herein acquired, took and has no other and further right in said real

estate than an easement, and the defendants and each of them claim and assert the right to occupy and use said premises, and they and each of them are occupying and using said premises, and they and each of them claim and assert the right to sell, convey and encumber the title of said land, subject only to an easement therein in favor of the plaintiff in this case; that said claims and assertations cast a cloud upon the title of the plaintiff herein to said real estate, and the plaintiff is entitled to have the title of said land quieted against such claims and assertations, and to have it found and decreed by the court in this case that by virtue of the facts hereinbefore alleged and said condemnation proceedings, the plaintiff in this case acquired, has and owns said land by an absolute fee simple title, and that the defendants or any of them, or any person claiming or to claim under or through them or any of them, have no right, title, interest, claim or lien in, to or upon said land or the possession thereof. That the plaintiff has no clear, adequate or speedy recovery at law and can obtain complete relief only by and in a court of equity."

Then follows an appropriate prayer.

To this amended petition, the defendants, Charles F. Walston and Nettie Walston, filed a demurrer, each for himself, "for the reason that said petition fails to state facts sufficient to constitute a cause of action against said defendants, or either of them; and said petition fails to state facts sufficient to entitle the plaintiff to the relief prayed for, or to any relief."

On March 11, 1940, after due submission thereof by the demurrants, the district court adjudged and decreed "That said demurrer of the defendants to the amended petition of the plaintiff should be and the same is hereby overruled. Defendants except." This cause "came on further to be heard at said time, and the defendants in open court elected to stand on their demurrer to the amended petition, and elected not to plead further to the amended petition of the plaintiff, and on motion of the plaintiff made in open court for the default of the defendants, their default was duly

called and taken and is entered herein." Thereafter the trial court entered a final judgment or decree and awarded relief substantially as prayed.

The defendants' claim, in the light of the factual admission of their demurrer, including the condemnation proceedings, the payment by the condemner of the sum of $14,580 as the adjudicated value of the quarter-section taken, and its receipt and acceptance as such by the defendants and appellants herein, as well as the contentions set forth in their briefs filed in this court, is not that these condemnation proceedings are void, but that the appellee herein obtained thereby a mere easement and not a fee title to the property, and that the owner of land condemned retains the fee title, has a right to every use and profit which can be derived from such land consistent with the easement, and that the possession and use asserted by defendants as set forth in the amended petition to the land condemned do not interfere with the enjoyment of the easement actually vested in the condemner. In the light of the allegations in plaintiff's amended petition contained, and above referred to, these contentions cannot be accepted.

In consideration of appellants' contentions it is to be remembered that "It is a rule of universal application in appellate proceedings that the examination of the reviewing court, whether on appeal or writ of error, will be confined to the questions determined by the trial court." *Coombs v. MacDonald,* 43 Neb. 632, 62 N. W. 41.

So, also, "A question not presented by the pleadings and evidence on the trial of a case will not on appeal be considered in this court." *Hyde v. Hyde,* 60 Neb. 502, 83 N. W. 673. See, also, *Nielsen v. Central Nebraska Land & Investment Co.,* 87 Neb. 518, 127 N. W. 897; *Omaha Fire Ins. Co. v. Dierks,* 43 Neb. 473, 61 N. W. 740; *Chapman v. Brewer,* 43 Neb. 890, 62 N. W. 320; 2 Standard Ency. of Procedure, 237.

"Questions discussed in briefs which are not properly presented by the record will not be considered." *Moulthan v. Apking,* 64 Neb. 378, 89 N. W. 1051. See, also, *Dufrene v.*

*Johnson*, 60 Neb. 18, 82 N. W. 107; 2 Standard Ency. of Procedure, 343.

The sole question presented here is the correctness of the trial court's final order overruling the general demurrer filed by the defendants in the district court. In other words, what did that decision involve?

First, it will be noted that the separate demurrer of the defendants contains certain statements in addition to the ground assigned therein—"That said petition fails to state facts sufficient to constitute a cause of action." Section 20-806, Comp. St. 1929, sets forth the provisions relative to demurrer under our Code. The additional objections in defendants' pleading referred to are not those provided for in that section. The applicable rule invoked by this situation is: "When the objections stated in a demurrer are not those provided by the Code, it can only be considered as a general demurrer that the petition does not state facts sufficient to constitute a cause of action." *McClary v. Sioux City & P. R. Co.*, 3 Neb. 44. The demurrer in this case, viewed as an entirety, will be so considered. This is in harmony with section 20-807, Comp. St. 1929. The rule is in fact general under the Code that "A party may demur to a pleading upon such grounds as are specified in the Code or statutes, and no others." 1 Bancroft, Code Pleading, 300, sec. 175. Thus, we accept defendants' pleading in this case as a general demurrer to the amended petition, and as admitting the truth of all allegations well pleaded therein. *Hallstead v. Perrigo*, 87 Neb. 128, 126 N. W. 1078; *Spalding v. Douglas County*, 85 Neb. 265, 122 N. W. 889.

An accepted authority states the applicable rule as follows:

"A general demurrer tests the substantive legal rights of parties upon admitted facts including proper and reasonable inferences of law and fact which may be drawn from facts which are pleaded. And, * * * if the complaint states facts which entitle the plaintiff to relief, whether legal or equitable, it is not demurrable on the ground that it does not state facts sufficient to constitute a cause of action." 1 Bancroft, Code Pleading, 313, sec. 183.

This jurisdiction at an early date announced, in substance, the foregoing rule, and in connection therewith the effects of the application thereof, in the following terms: "A party who stands upon his general demurrer to a pleading, thereby admits the material facts averred, and must take all the consequences which result from such admission." *People v. Weston*, 3 Neb. 312. See, also, *McArthur v. Clarke Drug Co.*, 48 Neb. 899, 67 N. W. 861; *Spalding v. Douglas County*, 85 Neb. 265, 122 N. W. 889.

Some of the established rules limiting the scope and purpose of a general demurrer are invoked by the situation presented in this case. Thus, "Although the prayer for relief is a part of the petition, it is no portion of the statement of facts required to constitute a cause of action. The entire omission of any demand for judgment would not subject the petition to general demurrer." *Fox v. Graves*, 46 Neb. 812, 65 N. W. 887. See, also, *Vila v. Grand Island Electric Light, Ice & Cold Storage Co.*, 68 Neb. 222, 94 N. W. 136; *Missouri Valley Land Co. v. Bushnell*, 11 Neb. 192, 8 N. W. 389; *Tomson v. Iowa State Traveling Men's Ass'n*, 88 Neb. 399, 409, 129 N. W. 529.

"If from the facts stated in the petition it appears that the plaintiff is entitled to any relief, a general demurrer will not lie." *George v. Edney*, 36 Neb. 604, 54 N. W. 986. See *Darr v. Berquist*, 63 Neb. 713, 89 N. W. 256; *Griggs v. LePoidevin*, 11 Neb. 385, 9 N. W. 557.

And the "general rule, variously stated, is that, where plaintiff is entitled to some relief, the objection to the relief asked or the amount of damages prayed for cannot be raised by demurrer, either at common law or under the Codes." 49 C. J. 395. See, also, *Lederer v. Union Savings Bank*, 52 Neb. 133, 71 N. W. 954; *Western Union Telegraph Co. v. Mullins*, 44 Neb. 732, 62 N. W. 880; *George v. Edney*, 36 Neb. 604, 54 N. W. 986.

From an inspection of the allegations contained in plaintiff's amended petition, well pleaded, which are admitted by defendants' demurrer, it clearly appears that plaintiff is entitled to substantial relief irrespective of whether the

rights that accrued to it by virtue of the condemnation proceedings are properly denominated an "easement" or a "fee title." The admitted statement of facts is wholly inconsistent with retention of possession of the premises and present occupation and continued use thereof by the appellants, as alleged in the petition.

In *Roberts v. Sioux City & P. R. Co.*, 73 Neb. 8, 17, 102 N. W. 60, a case where similar claims were before this court and where the matter involved was a railroad right of way, Barnes, J., in delivering the opinion of the court included the following observations:

"It is said that there is no evidence that the 50-feet strips of right of way in dispute are necessary for the operation of defendant's railroad, and therefore the plaintiff claims that he ought at all events to be awarded the injunction prayed for. The statute provides that a railroad company may acquire for right of way purposes so much land as may be necessary therefor, not exceeding 200 feet in width. Whether the amount asked for in a condemnation proceeding is necessary or not must be determined in such proceeding; and the condemnation of a certain width for a right of way is an adjudication that said width is necessary.

"The case of *Northern P. R. Co. v. Smith*, 171 U. S. 260, was an ejectment suit against the company to recover a portion of its right of way. The trial court found that the company claimed a 400-feet right of way under a grant by congress; that the company had actually used only 25 feet thereof; that the remaining part was not necessary for the operation of the road, and that the plaintiff should recover. The supreme court of the United States reversed the case, holding that a grant of a 400-feet right of way was conclusive that such an amount was necessary, and that a showing of the amount actually used was immaterial. The case is also an authority that ejectment will not lie against a right of way obtained with the knowledge of the owner of the fee. Under this decision the plaintiff herein could not recover the land in question by ejectment, and it is therefore doubtful about his right to an injunction to prevent the company taking its own.

"The most logical rule is that announced in *Hurd v. Rutland & B. R. Co.*, 25 Vt. 116, in which the supreme court of that state held that those from whom land has been taken for a right of way retain no unquestionable right to its use for pasturage or otherwise, and that the right of the railroad company to the use and possession of its right of way is absolute during the existence of the easement.

"*Dietrichs v. Lincoln & N. W. R. Co.*, 13 Neb. 361, is a decision to the effect that the judgment of a railroad manager that a certain tract of land ought to be condemned for railroad purposes is *prima facie* evidence that said land is necessary for the operation of the road. If this be so, then the judgment of the defendant, as indicated by the threat alleged that it ought to take possession of its right of way to its full width, ought to be at least *prima facie* evidence of the necessity of such taking, and casts upon the plaintiff the burden of proving that the company does not need the land in controversy; and the cases of *Forney v. Fremont, E. & M. V. R. Co.*, 23 Neb. 465, and *Chicago, B. & Q. R. Co. v. Hull*, 24 Neb. 740, decide nothing contrary to this rule. It cannot be the law that even a railroad company must prove that it needs its property in order to recover possession of it. If plaintiff believed that defendant did not need a 200-feet right of way through his homestead, he should have raised that issue in the condemnation proceedings. He did not do so, and we do not perceive how he can do so now, either justly or lawfully, without at least tendering back to the company a proper part of the $500 which he received as compensation for the 200-feet easement."

It is obvious that the right of defendants in this land taken in this case by eminent domain, under the circumstances detailed in the petition, ceased when the purchase money was received by them, and even if the right be asserted pursuant to what in law amounted to an easement, their rights would not be increased thereby.

In the instant case neither by pleading nor by brief do the defendants challenge the lawful incorporation of the plaintiff district or the complete compliance by it of all

statutes pertaining to the subject of the rights and powers of eminent domain with which it had been legislatively endowed. Defendants' brief, in addition to their claim of lawful possession, challenges only the allegation in the amended petition that from the condemnation proceeding plaintiff derived a fee simple title to the land taken by it.

However, in this case, in view of the allegations of plaintiff's amended petition, demurred to by the defendants and admitted thereby, the right of plaintiff to enter into complete, immediate and absolute possession of this tract of land to prepare and employ it in the accomplishment of the public purpose for which it had been taken, condemned, and paid for, as well as the unlawful retention, occupation and use thereof by the defendants, cannot be gainsaid. It matters not whether these rights conferred on plaintiff by the statutes of eminent domain and the acts authorized thereby were, under the terms of the decree entered, to be exercised and performed by an owner in fee simple of the land involved or by virtue of the ownership of an easement therein, for still the rights and dominion and acts whose performance was necessary to accomplish the public purpose were identical in either case and contemplated by the statutes and proceedings had thereunder. At all events, the necessity for and extent of the taking of property for a public use is a legislative question, and the time when the public utility requires the use of the property condemned, after payment has been made to the owner, rests within the determination of the condemner. *Paxton & Hershey Irrigating Co. v. Farmers & Merchants Irrigation Co.*, 45 Neb. 884, 64 N. W. 343; *People v. Jefferson District Court*, 46 Colo. 386, 104 Pac. 484, 24 L. R. A. n. s. 886; *Roberts v. Sioux City & P. R. Co.*, 73 Neb. 8, 102 N. W. 60.

It is obvious that the issue actually formed by the demurrer to the amended petition in the present case and determined by the trial court, as a matter of pleading, did not necessarily challenge the lawfulness of plaintiff's claim of ownership in fee simple. The question presented was determined by the existence in plaintiff of a present right of

possession, dominion and exclusive use of the property taken for the advancement of the public purpose for which it was condemned by eminent domain. These facts, which the admission made by the demurrer conclusively establish, disclose that plaintiff was entitled to redress in this proceeding for the rights so infringed. On the basis of the situation here outlined, the order entered by the trial court overruling defendants' demurrer was correctly made. After the ruling on the demurrer the defendants pleaded no further and permitted their defaults to be entered. Following these proceedings the district court entered a judgment by default on the merits, but all that is presented here is the claimed error in the ruling upon the demurrer which, as here determined, was correctly made.

It follows that the judgment entered in the trial court is proper, and is in all respects

AFFIRMED.