Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
09/16/2016 09:08 AM CDT

STATE OF NEBRASKA, APPELLEE, V.
MICHAEL E. HARRIS, APPELLANT.
___ N.W.2d ___

Filed September 16, 2016.    No. S-15-332.

1. **Postconviction: Evidence: Appeal and Error.** In an evidentiary hearing on a motion for postconviction relief, the trial judge, as the trier of fact, resolves conflicts in the evidence and questions of fact. An appellate court upholds the trial court's findings unless they are clearly erroneous. In contrast, an appellate court independently resolves questions of law.

2. **Effectiveness of Counsel: Appeal and Error.** A claim that defense counsel provided ineffective assistance presents a mixed question of law and fact. When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error. With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's decision.

3. **Postconviction: Judgments: Appeal and Error.** Whether a claim raised in a postconviction proceeding is procedurally barred is a question of law. When reviewing questions of law, an appellate court resolves the questions independently of the lower court's conclusion.

4. **Effectiveness of Counsel: Proof.** To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced his or her defense. To show deficient performance, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area. To show prejudice, the defendant must demonstrate reasonable probability

that but for counsel's deficient performance, the result of the proceeding would have been different.

5. **Postconviction: Evidence.** When a court grants an evidentiary hearing in postconviction proceedings, it is obligated to determine the issues and make findings of fact and conclusions of law with respect thereto.

6. **Judgments: Appeal and Error.** The purpose of requiring factual findings and conclusions of law is to facilitate appellate review.

7. **Courts: Judgments: Appeal and Error.** The sufficiency of a trial court's factual findings and legal conclusions will depend to a large extent on the nature of the case and the assignments of error urged on appeal. The court's findings must be sufficient to address and resolve all issues presented by the pleadings and to permit an appellate court to reach all errors assigned on appeal.

8. **Self-Defense: Statutes.** The duty to retreat is spelled out in Neb. Rev. Stat. § 28-1409(4)(b) (Reissue 2008), and the corollary privilege of non-retreat is addressed in § 28-1409(4)(b)(i).

9. **Self-Defense.** Under Neb. Rev. Stat. § 28-1409(4)(b)(i) (Reissue 2008), the privilege of nonretreat exists only in one's dwelling or place of work.

10. **Self-Defense: Words and Phrases.** For purposes of Neb. Rev. Stat. § 28-1409 (Reissue 2008), the Legislature has defined "dwelling" as "any building or structure, though movable or temporary, or a portion thereof, which is for the time being the actor's home or place of lodging."

11. **Appeal and Error.** An appellate court will not consider error which is neither assigned nor discussed in an appellant's initial brief.

12. **Effectiveness of Counsel.** Defense counsel does not perform in a deficient manner simply by failing to make the State's job more difficult.

13. **Pleas.** During a plea hearing, the court's advisement regarding possible penalties need not extend beyond reciting the range of possible penalties for the charge to which a plea is entered.

Appeal from the District Court for Douglas County: Timothy P. Burns, Judge. Affirmed.

Michael J. Wilson, of Schaefer Shapiro, L.L.P., for appellant.

Douglas J. Peterson, Attorney General, and Erin E. Tangeman for appellee.

Heavican, C.J., Wright, Connolly, Miller-Lerman, Cassel, Stacy, and Kelch, JJ.

Stacy, J.

## I. NATURE OF CASE

Michael E. Harris appeals from the denial of postconviction relief following an evidentiary hearing. Finding no error in the district court's ruling, we affirm.

## II. BACKGROUND

### 1. Trial and Direct Appeal

After a shooting death in 2004, Harris was charged in a three-count information with first degree murder, use of a deadly weapon to commit a felony, and possession of a deadly weapon by a prohibited person. Harris pled guilty to possession of a deadly weapon by a prohibited person and proceeded to trial on the remaining two counts.

At trial, Harris admitted shooting Isice Jones on July 5, 2004, but claimed he did so in self-defense. On direct appeal, we summarized the competing theories of the case in a memorandum opinion[1] as follows:

> The State's theory of the case, as summarized, was that Harris was dating a woman named Valerie Johnson. Johnson had a daughter from a previous relationship with a man named Nate Jackson, who was deceased. According to the State, [Jones] was a friend of Jackson and promised Jackson, before Jackson's death, that [he] would look after Jackson's daughter. According to the State's theory, Harris resented the attention [Jones] paid to Johnson and Jackson's daughter. The State contended that when [Jones] tried to visit Jackson's daughter at Harris' residence on July 5, Harris assaulted [Jones], and then shot and killed him.
>
> The defense offered a theory of self-defense. The defense contended that Harris was afraid of [Jones], that [Jones] had made an angry telephone call to Johnson at Harris' home, and that Johnson had told Harris that Jones

---

[1] *State v. Harris*, 269 Neb. xix (No. S-04-665, May 18, 2005).

was coming to Harris' house with a gun and a dog. The defense contended that Harris was going to leave, to avoid a confrontation, but he put a .22-caliber pistol in his pocket to protect himself. Before Harris left, however, [Jones] arrived with a pit bull, and [Jones] behaved aggressively. According to the defense's theory, Harris thought he saw something in [Jones'] hand, and Harris shot [Jones] in self-defense.

In the instant appeal, Harris raises various claims of ineffective assistance of trial counsel. Some additional background is helpful to understanding these claims.

Harris testified at trial. He said that as he was placing a bag of trash on the curb in front of his house, Jones came speeding out of the alley in a van. Jones stopped the van at the end of Harris' driveway and jumped out screaming and cursing. Jones approached Harris aggressively and pushed his way through the open gate across Harris' driveway. Jones shoved Harris into the gate, cutting his hand. Harris testified he feared for his life, so he pulled his gun and told Jones to leave. Jones told Harris "'you just going to have to shoot me,'" and Jones raised his hand. Harris thought Jones was holding a gun, so he backed up and shot at Jones several times. Harris testified that Jones tried to duck, then ran back through the gate and fell down on the driveway. Harris ran into the house and shut the door, then came back outside to see if he could find Jones' gun to retrieve it for police. Harris saw Jones on the ground in the driveway, and on the ground next to him was a cell phone. Harris testified he panicked and ran back into the house, then out the back door, where he ditched the gun in an alley.

Johnson, Harris' girlfriend, also testified at trial. She did not witness the shooting but testified about events leading up to it. She testified Jones had telephoned her the day of the shooting to say he was angry that she and Harris had not answered their telephone the previous day when Jones tried to visit. Jones told Johnson he would be coming over to Harris'

residence with a gun and his pit bull dog. Johnson told Harris what Jones had said, and she suggested Harris should leave. Harris agreed and then went to the garage to get a gun. Jones arrived shortly thereafter.

The shooting was witnessed by several individuals, including three women who followed Jones to Harris' house in a different vehicle. One of the three women was Jones' girlfriend, and the other two were sisters of Johnson. Jones' girlfriend testified that when she and the other women arrived at Harris' house, Jones was stepping out of his van. All three women testified that Jones was calm as he approached Harris and that they saw Harris motion for Jones to enter the yard. The women did not see a gun in Jones' hand and did not observe any sort of physical altercation between Harris and Jones before Harris pulled out a gun and shot Jones. Jones fell to the ground in the driveway. The women did not go to check on Jones immediately but instead drove away to find police officers they had seen nearby. When they arrived back with police, they observed Jones lying in the driveway. Jones' girlfriend noticed he had a cell phone in his hand.

Two 7-year-old boys were riding bicycles in the area at the time of the shooting. One of the boys testified he saw Harris shoot a man three or four times in the driveway. The boy testified that the man did not have a gun but, after falling to the ground, pulled out a cell phone and tried to make a call. The other boy did not see the initial shots fired, but testified that he saw a man on the ground in the driveway and saw the man take a cell phone out of his pocket. Both boys testified that they saw Harris go inside the house while the other man lay in the driveway and then saw Harris come back outside wiping a gun with a blue towel. Both boys testified Harris then walked over to the man and shot him again.

A woman who lived across the street from Harris testified she was on her front porch when she heard what she thought were several firecrackers, followed by women screaming. From across the street, she saw a man on the ground in Harris'

driveway. While on the telephone with the 911 emergency dispatch service, the woman saw another man come out of Harris' house and point a gun at the man on the ground. She testified she saw the man with the gun say something she could not hear and then walk back into the house.

The autopsy showed Jones was shot three times. Two bullets entered his body from the front, and one entered from the back. Police located three fired .22-caliber shell casings in Harris' driveway. A small blue towel was recovered by police from Harris' dining room. The towel tested positive for gunshot residue.

The jury found Harris guilty of the lesser-included offense of second degree murder and of using a deadly weapon to commit a felony. He was sentenced to consecutive prison terms of 25 years to life for second degree murder, 25 to 30 years for use of a deadly weapon to commit a felony, and 10 to 15 years for possession of a deadly weapon by a prohibited person.

This court affirmed Harris' convictions and sentences on direct appeal.[2] Harris was represented by lawyers from the same law firm at trial and on direct appeal, so his first opportunity to raise claims of ineffective assistance was in his postconviction motion.[3]

## 2. Postconviction Proceedings

On August 20, 2012, Harris filed a verified motion for postconviction relief. Shortly thereafter, he was granted leave to file a supplemental verified motion in which he presented more than 20 claims of ineffective assistance of trial counsel. We address only those which are necessary to our analysis of the errors assigned by Harris on appeal.

The district court determined Harris was entitled to an evidentiary hearing on "a few of [the] claims he raises" but did

---

[2] *State v. Harris, supra* note 1.

[3] See *State v. Fox*, 286 Neb. 956, 840 N.W.2d 479 (2013).

not specify which. The district court appointed Harris post-conviction counsel, and eventually an evidentiary hearing was held. It does not appear from the record that the district court restricted the evidentiary hearing to any specific claims, but instead left the presentation of evidence to the attorneys.

At the evidentiary hearing, witnesses were called and depositions were offered and received. The district court took judicial notice of the prior court proceedings, the entire bill of exceptions on direct appeal, and all the postconviction pleadings.

After posthearing briefing was completed, the district court entered a written order overruling the motion for postconviction relief. The court noted that Harris' postconviction arguments "[p]rimarily" centered on his claim that his trial counsel was ineffective for failing to interview and subpoena two witnesses who Harris claims would have supported his claim of self-defense. The evidence showed that before trial, Harris gave his attorney a letter listing several witnesses he wanted to be considered for his defense. Neighbors Betty Woods and Lee Perry were included on that list. Both Woods and Perry were deposed, and their depositions were received into evidence at the postconviction hearing.

Woods testified she was looking out her window and saw a man drive up to Harris' house. She saw Harris and the man "wrestling" or "horse playing" just inside the gate near the street, but thought it looked like a "play fight," so she stopped watching. She did not see anything in either man's hand and never saw a gun. When she returned to the window, she saw the man on the ground. According to Woods, she was never contacted or interviewed by Harris' trial counsel or anyone from the defense team.

Perry testified he saw Jones knock on Harris' front door the day before the shooting. No one answered the door, and Perry saw Jones leave a note on the windshield of Harris' car. Perry told Harris later that day about the visit and the note, but Perry never read the note and did not know its contents.

According to Perry, he was never contacted or interviewed by Harris' trial counsel.

The deposition of Harris' trial counsel was also received into evidence at the postconviction hearing. Trial counsel acknowledged that Harris had given him a letter with the names of several potential witnesses, and counsel testified that he assigned a law clerk to interview both Woods and Perry. Harris' trial counsel testified that he decided not to call Woods as a witness because, based on what his law clerk told him, Woods did not see the incident and did not see the gun. He added that Woods did not relay to his law clerk the same information Woods provided later. Harris' trial attorney had no memory of Perry but, when he was told the substance of Perry's deposition testimony, he was uncertain whether he would have called Perry to testify at trial.

The law clerk, who testified at the evidentiary hearing, did not corroborate trial counsel's testimony. The law clerk had no recollection of interviewing either Woods or Perry and testified that because this was his first murder case as a law clerk, it "[p]robably" would stand out in his mind if he had talked with either witness.

In its order denying postconviction relief, the district court made a specific factual finding that no one from Harris' defense team interviewed either Woods or Perry. The court concluded that trial counsel performed deficiently by failing to conduct a reasonable investigation, but found that Harris was not prejudiced by counsel's deficient performance. The court reasoned that even though the testimony of Woods and Perry would have "aided [Harris'] claim of self-defense," it would not have done so "to the extent that it was reasonably probable that the jury would have acquitted him if it had heard the testimony."

As it regarded the myriad of other postconviction claims asserted by Harris, the district court made the following consolidated findings and conclusions:

The evidence and record establishes [sic] that [Harris] has not met his burden as to the numerous other claims of ineffective assistance of counsel made in his amended motion for postconviction relief. The Court finds trial counsel's testimony adduced at the evidentiary hearing by deposition refutes, or satisfactorily explains, [Harris'] other claims raised in [Harris'] deposition that was also received at the evidentiary hearing. These other issues do not require any further discussion except as to the issue of the trial court not properly instructing on the issue of self-defense. As to this issue, this Court notes that the trial court did not instruct the jury that [Harris] had a duty to retreat before using deadly force. Nor can it be argued that deadly force can be used for the protection of property. [Citations omitted.] Therefore, there was no error in regards to this claim.

The district court denied the motion for postconviction relief. Harris timely appealed, and we moved the appeal to our docket pursuant to our statutory authority to regulate the caseloads of the appellate courts of this state.[4]

## III. ASSIGNMENTS OF ERROR

Harris assigns, rephrased and consolidated, that the district court erred in denying postconviction relief (1) on the ground trial counsel was ineffective in failing to interview Woods and Perry and offer their testimony at trial, (2) without making specific factual findings and conclusions of law as required by Neb. Rev. Stat. § 29-3001 (Cum. Supp. 2014), (3) on the ground trial counsel was ineffective for failing to request a jury instruction on the privilege of nonretreat, and (4) on the ground trial counsel was ineffective for failing to adequately advise Harris of the consequences of his guilty plea to possession of a deadly weapon by a prohibited person. Harris also assigns

---

[4] Neb. Rev. Stat. § 24-1106(3) (Supp. 2015).

that it was plain error for the trial court to accept his guilty plea, because the State did not establish he was represented by or waived counsel on the prior felony and because the trial court failed to advise Harris of the sentencing consequences of entering his plea.

## IV. STANDARD OF REVIEW

[1] In an evidentiary hearing on a motion for postconviction relief, the trial judge, as the trier of fact, resolves conflicts in the evidence and questions of fact.[5] An appellate court upholds the trial court's findings unless they are clearly erroneous.[6] In contrast, an appellate court independently resolves questions of law.[7]

[2] A claim that defense counsel provided ineffective assistance presents a mixed question of law and fact.[8] When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error.[9] With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*,[10] an appellate court reviews such legal determinations independently of the lower court's decision.[11]

[3] Whether a claim raised in a postconviction proceeding is procedurally barred is a question of law.[12] When reviewing

---

[5] *State v. Poe*, 292 Neb. 60, 870 N.W.2d 779 (2015).

[6] See *id.*

[7] *Id.*

[8] *State v. DeJong*, 292 Neb. 305, 872 N.W.2d 275 (2015); *State v. Thorpe*, 290 Neb. 149, 858 N.W.2d 880 (2015).

[9] *Id.*

[10] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[11] *DeJong, supra* note 8; *Thorpe, supra* note 8.

[12] *Id.*

questions of law, an appellate court resolves the questions independently of the lower court's conclusion.[13]

## V. ANALYSIS

### 1. INEFFECTIVE ASSISTANCE OF COUNSEL

[4] To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*,[14] the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced his or her defense.[15] To show deficient performance, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area.[16] To show prejudice, the defendant must demonstrate reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different.[17]

Harris' primary argument, both before the district court and on appeal, is that his trial counsel was ineffective for failing to interview Woods and Perry and call them to testify at trial. The district court made a factual finding that no one from Harris' defense team interviewed Woods and Perry as potential witnesses. We review this factual finding for clear error, and we find none.

The district court also concluded that counsel's failure to contact these witnesses constituted deficient performance, but that Harris had not proved he was prejudiced, because even if Woods and Perry had testified, there was no reasonable probability that the result of the proceeding would have been different. Having reviewed the record, we agree.

---

[13] *Id.*

[14] *Strickland, supra* note 10.

[15] *State v. Vanderpool*, 286 Neb. 111, 835 N.W.2d 52 (2013).

[16] *Id.*

[17] *Id.*

Perry's testimony that he saw Jones leave a note on Harris' car the day before the shooting is consistent with the testimony of others at trial who testified that Jones went to Harris' house the day before the shooting and left when Harris did not answer the door. Harris argues that in addition to placing Jones at Harris' house the day before the shooting, Perry's testimony would have provided evidence that Jones left a threatening note. But Perry could not have testified to the contents of the note, because he admits he never read it. And the fact that Harris was aware of the note (and presumably its contents) at the time of trial, but neither offered it nor testified to its contents, belies his argument now that the note contained a threat.

Woods' testimony that she saw Harris and another man "wrestling" or "play fight[ing]" would have supported Harris' claim that an altercation of some sort occurred between Harris and Jones, but her testimony would not have changed the outcome of the trial. Woods did not see anything suggesting that Jones was the initial aggressor or that Jones had a gun. And importantly, Woods' testimony would not have refuted the strongest evidence that Harris was not acting in self-defense: The two boys who testified that after Jones had been shot and while he lay on the ground in the driveway, Harris walked down the driveway, stood over Jones, and shot him again.

Even if Harris' trial counsel had interviewed Woods and Perry and called them to testify at trial, there is no reasonable probability that the result of the proceeding would have been different. These assignments of error are without merit.

## 2. DISTRICT COURT'S ORDER DENYING POSTCONVICTION RELIEF

Harris argues that the district court's order denying postconviction relief did not contain adequate factual findings, and he asks that the cause be remanded with directions to make specific findings on each of the more than 20 claims of

ineffective assistance which he presented in his supplemental verified motion. We conclude remand is unnecessary because the court's factual findings were sufficient.

[5,6] When a court grants an evidentiary hearing in post-conviction proceedings, it is obligated to "determine the issues and make findings of fact and conclusions of law with respect thereto."[18] We have explained that without factual findings and conclusions of law, we are unable to reach the merits of claims that a district court erred in ruling on a postconviction motion after an evidentiary hearing.[19] As such, the purpose of requiring factual findings and conclusions of law is to facilitate appellate review. With that purpose in mind, we find the district court's order in this case contained sufficient factual findings and conclusions of law to permit us to reach all assigned errors.

The court's 11-page order summarized the trial record and recited the evidence adduced during the evidentiary hearing. The court noted that Harris "[p]rimarily" focused his evidence and argument at the hearing on claims that his trial counsel was ineffective for failing to interview and subpoena Woods and Perry to testify at trial. It is not surprising, then, that the court likewise focused much of its analysis on those same claims, detailing the evidence adduced and making specific factual findings and conclusions of law with respect to those claims.

Harris does not suggest the trial court's factual findings and legal conclusions were insufficient regarding the ineffective assistance claims involving Woods and Perry, but he argues the court made insufficient findings regarding Harris' many other claims of ineffective assistance. Specifically, Harris takes issue with the court's consolidated findings and conclusions that he had "not met his burden as to the numerous other claims of

---

[18] § 29-3001(2). See, also, *State v. Costanzo*, 235 Neb. 126, 454 N.W.2d 283 (1990).

[19] *State v. Costanzo, supra* note 18.

ineffective assistance of counsel made in his amended motion for postconviction relief" and with the court's general finding that "trial counsel's testimony adduced at the evidentiary hearing by deposition refutes, or satisfactorily explains, [Harris'] other claims."

Importantly, Harris does not assign error to the court's finding that he failed to meet his burden of proof regarding these other claims. Rather, he argues on appeal that the court's order did not make separate findings and conclusions regarding each of his claims and asks that the cause be remanded with instructions to do so.

[7] We see nothing to be gained by remanding this cause for more detailed factual findings concerning claims which Harris does not contend were incorrectly decided and on which he submitted little or no evidence. While the sufficiency of a trial court's factual findings and legal conclusions will depend to a large extent on the nature of the case and the assignments of error urged on appeal, here we find the district court's order contained sufficient factual findings and conclusions of law to address and resolve all issues presented by the pleadings and to permit us to reach all errors assigned on appeal. There is no merit to this assignment of error.

### 3. JURY INSTRUCTION ON PRIVILEGE OF NONRETREAT

Harris argues his trial counsel was ineffective for failing to request a jury instruction on the privilege of nonretreat. He argues that because the jury was instructed on self-defense, his attorney should also have requested an instruction on the privilege of nonretreat, to avoid the possibility that the jury might make "the erroneous finding that Harris, by refusing to retreat from the front yard of his home, provoked Jones' use of force against him with the intent of shooting Jones in response."[20]

---

[20] Brief for appellant at 34.

Under Neb. Rev. Stat. § 28-1409(4) (Reissue 2008), the use of deadly force is not justified unless

the actor believes that such force is necessary to protect himself against death, serious bodily harm, kidnapping or sexual intercourse compelled by force or threat, nor is it justifiable if:

(a) The actor, with the purpose of causing death or serious bodily harm, provoked the use of force against himself in the same encounter; or

(b) The actor knows that he can avoid the necessity of using such force with complete safety by retreating . . . except that:

(i) The actor shall not be obligated to retreat from his dwelling or place of work, unless he was the initial aggressor[.]

[8-10] As such, the duty to retreat is spelled out in § 28-1409(4)(b) and the corollary privilege of nonretreat is addressed in § 28-1409(4)(b)(i). The privilege of nonretreat exists only in one's "dwelling or place of work."[21] For purposes of § 28-1409, the Legislature has defined "dwelling" as "any building or structure, though movable or temporary, or a portion thereof, which is for the time being the actor's home or place of lodging."[22]

Here, the evidence did not support the giving of an instruction regarding the privilege of nonretreat, because there was no evidence suggesting Harris and Jones were inside Harris' dwelling at any point during their encounter. Absent such evidence, an instruction informing the jury that Harris had a privilege of nonretreat was not warranted, and Harris' trial counsel was not ineffective for failing to request such an instruction. This assignment of error is without merit.

[11] For the sake of completeness, we note that Harris' reply brief also discusses his trial counsel's failure to request a jury

---

[21] § 28-1409(4)(b)(i).

[22] Neb. Rev. Stat. § 28-1406(5) (Reissue 2008).

instruction on sudden quarrel manslaughter. Because this was neither assigned as error nor discussed in Harris' initial brief, we do not consider it further.[23]

## 4. Harris' Guilty plea

Prior to trial, Harris entered a guilty plea to count III of the information, which charged him with possession of a deadly weapon by a prohibited person. During the plea colloquy, Harris admitted that on or about July 5, 2003, in Douglas County, he was in possession of an operable firearm, and further admitted that prior to July 5th, he had been convicted of a felony and the time for appeal had passed. After Harris admitted the prior conviction, his attorney stipulated on the record that Harris had previously been convicted of first degree assault and been sentenced to 24 months in prison. The district court accepted Harris' plea and found him guilty of possession of a deadly weapon by a prohibited person.

Harris now argues his counsel was ineffective in two respects. First, he argues counsel was ineffective for stipulating to the prior felony during the hearing. Next, Harris argues counsel was ineffective for failing to advise him that if the jury ultimately found him guilty on the separate charge of using a deadly weapon to commit a felony, then any sentences imposed for the two firearm-related counts could not run concurrently. We address each argument below.

### (a) Stipulating to Prior Felony

[12] Harris does not explain how his counsel rendered ineffective assistance by stipulating to the prior felony during the plea hearing. We have explained that defense counsel does not perform in a deficient manner simply by failing to make the State's job more difficult,[24] and Harris offers no other

---

[23] See *Keithley v. Black*, 239 Neb. 685, 477 N.W.2d 806 (1991). See, also, *De Lair v. De Lair*, 146 Neb. 771, 21 N.W.2d 498 (1946).

[24] *State v. Ash*, 293 Neb. 583, 878 N.W.2d 569 (2016).

argument as to why his counsel's performance regarding the stipulation was deficient. Most notably, there was no evidence offered suggesting the State would have been unable to prove the prior felony in the absence of counsel's stipulation. The assignment that counsel was ineffective for stipulating to a prior felony conviction during the plea hearing is meritless.

Harris also asks us to find it was plain error for the trial court to accept the stipulation, and ultimately Harris' plea, because the stipulation did not establish that Harris was represented by counsel or that he waived counsel in connection with the prior felony conviction.[25] This claim was not raised in Harris' supplemental verified motion for postconviction relief or presented to the district court, and we will not consider it for the first time on appeal.[26]

### (b) Advising on Sentencing
### Consequences of Plea

Harris entered a guilty plea to the charge of possession of a deadly weapon by a prohibited person and proceeded to trial on the remaining charges. He now argues his trial counsel was ineffective for failing to advise him, at the time he entered his plea, that if the jury found him guilty of using a firearm to commit a felony, then the sentence imposed on that conviction would be ordered to be served consecutively to any other sentence imposed.[27] Harris also asks that we find it was plain error for the trial court not to advise him, when accepting his plea to possession of a deadly weapon by a prohibited person, of the possible penalties for using a firearm to commit a felony.

---

[25] See *State v. Watt*, 285 Neb. 647, 832 N.W.2d 459 (2013) (before prior felony conviction can be used to prove defendant is prohibited person, State must prove that prior felony conviction was counseled or that counsel was waived).

[26] See *State v. Sellers*, 290 Neb. 18, 858 N.W.2d 577 (2015).

[27] See Neb. Rev. Stat. § 28-1205(3) (Cum. Supp. 2014).

In *State v. Golden*,[28] the defendant entered a guilty plea to two counts: (1) assaulting an officer, third degree, and (2) using a firearm to commit a felony. On direct appeal, we found his pleas had not been entered voluntarily, because he had not been advised that using a firearm to commit a felony carried a mandatory consecutive sentence. We reasoned that although the court had correctly described the sentencing ranges for both felonies, it had failed to inform the defendant that the statutory penalty for using a firearm to commit a felony mandated that such sentence be served consecutively to any other sentence imposed.

[13] Here, the evidence in the record shows trial counsel advised Harris that using a firearm to commit a felony carried a mandatory consecutive sentence. Moreover, the rule announced in *Golden* has no meaningful application to a case such as this. The record confirms Harris was correctly advised regarding the range of possible penalties for the charge to which he was pleading. The advisement regarding possible penalties need not extend beyond reciting the range of possible penalties for the charge to which a plea is entered.[29] This assignment of error is meritless.

## VI. CONCLUSION

Based on the foregoing, we affirm the judgment of the district court.

Affirmed.

---

[28] *State v. Golden*, 226 Neb. 863, 415 N.W.2d 469 (1987).

[29] See *State v. Irish*, 223 Neb. 814, 394 N.W.2d 879 (1986).