Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
02/17/2017 09:09 AM CST

State of Nebraska, appellee, v.
Marco E. Torres, Jr., appellant.
___ N.W.2d ___

Filed February 17, 2017.    No. S-16-269.

1. **Postconviction: Evidence: Appeal and Error.** In an evidentiary hearing on a motion for postconviction relief, the trial judge, as the trier of fact, resolves conflicts in the evidence and questions of fact. An appellate court upholds the trial court's findings unless they are clearly erroneous. An appellate court independently resolves questions of law.

2. **Effectiveness of Counsel: Appeal and Error.** A claim that defense counsel provided ineffective assistance presents a mixed question of law and fact. When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error.

3. ____: ____. With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's decision.

4. **Right to Counsel: Effectiveness of Counsel.** The right to counsel has been interpreted to include the right to effective counsel.

5. **Effectiveness of Counsel: Proof: Appeal and Error.** Under the standard established by the U.S. Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), claims of ineffective assistance of counsel by criminal defendants are evaluated using a two-prong analysis: first, whether counsel's performance was deficient and, second, whether the deficient performance was of such a serious nature so as to deprive the defendant of a fair trial.

6. **Effectiveness of Counsel: Proof.** To show that the performance of a prisoner's counsel was deficient, it must be shown that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law.

7. \_\_\_\_: \_\_\_\_. To establish the prejudice element of the *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), test, a defendant must show that the counsel's deficient performance was of such gravity to render the result of the trial unreliable or the proceeding fundamentally unfair.

8. **Trial: Attorneys at Law: Effectiveness of Counsel: Appeal and Error.** When reviewing claims of alleged ineffective assistance of counsel, an appellate court affords trial counsel due deference to formulate trial strategy and tactics.

9. **Effectiveness of Counsel: Presumptions: Appeal and Error.** There is a strong presumption that counsel acted reasonably, and an appellate court will not second-guess reasonable strategic decisions.

10. **Trial: Effectiveness of Counsel: Witnesses.** The decision to call, or not to call, a particular witness, made by counsel as a matter of trial strategy, even if that choice proves unproductive, will not, without more, sustain a finding of ineffectiveness of counsel.

11. **Effectiveness of Counsel.** Under the *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), framework for ineffective assistance of counsel claims, a court may address the two elements, deficient performance and prejudice, in either order.

12. **Effectiveness of Counsel: Proof.** To prove the prejudice element of an ineffective assistance of counsel claim, a prisoner must prove that his or her counsel's deficient performance was of such gravity to render the result of the trial unreliable or the proceeding fundamentally unfair, by establishing that but for the deficient performance of counsel, there is a "reasonable probability" that the outcome of the case would have been different.

13. **Postconviction: Constitutional Law: Prosecuting Attorneys: Effectiveness of Counsel.** A claim of prosecutorial misconduct may be considered on postconviction only to the extent it constitutes a constitutional violation under the U.S. or Nebraska Constitutions.

14. **Evidence: Prosecuting Attorneys: Due Process.** The nondisclosure by the prosecution of material evidence favorable to the defendant and requested by the defendant violates the Due Process Clause, irrespective of the good faith or bad faith of the prosecution.

15. **Postconviction: Appeal and Error.** A motion for postconviction relief is not a substitute for an appeal.

16. \_\_\_\_: \_\_\_\_. A motion for postconviction relief cannot be used to secure review of issues which were known to the defendant and could have been litigated on direct appeal; such issues are procedurally barred.

17. **Postconviction: Prosecuting Attorneys: Appeal and Error.** Whether a claim of prosecutorial misconduct could have been litigated on direct

appeal and is thus procedurally barred from being litigated on postconviction depends on the nature of the claim.

18. \_\_\_\_: \_\_\_\_: \_\_\_\_. Where the claim of prosecutorial misconduct is such that a determination of the merits is possible based on the record on direct appeal, such as statements made in a prosecutor's closing argument, it is procedurally barred from being litigated on postconviction.

19. **Postconviction: Appeal and Error.** Where an evidentiary hearing is necessary to decide the merits of the claim, the failure to raise the issue on direct appeal does not preclude it from being litigated on postconviction.

Appeal from the District Court for Hall County: JAMES D. LIVINGSTON, Judge, Retired. Affirmed.

Alfred E. Corey III, of Shamberg, Wolf, McDermott & Depue, for appellant.

Douglas J. Peterson, Attorney General, and James D. Smith for appellee.

HEAVICAN, C.J., WRIGHT, MILLER-LERMAN, CASSEL, STACY, KELCH, and FUNKE, JJ.

WRIGHT, J.

## I. NATURE OF CASE

Marco E. Torres, Jr., was convicted by jury of two counts of first degree murder, one count of robbery, three counts of use of a deadly weapon to commit a felony, and one count of unauthorized use of a financial transaction device. Torres was sentenced to death on each murder conviction, 50 to 50 years' imprisonment on each of the robbery and use convictions, and 20 months' to 5 years' imprisonment for the unauthorized use of a financial transaction device conviction. His convictions were affirmed by this court on direct appeal.[1] Torres filed a petition for postconviction relief in the district court for Hall County. After an evidentiary hearing, the district court denied Torres' petition. Torres appeals this denial. We affirm.

---

[1] *State v. Torres*, 283 Neb. 142, 812 N.W.2d 213 (2012).

## II. BACKGROUND

### 1. Torres' Relationship With Other Characters

Torres was involved in drug trafficking in Grand Island, Nebraska. Through his drug activities, Torres knew a man known as Billy Packer, who was also involved in drug trafficking. It was through Packer that Torres met Jose Cross, Gina Padilla, and Timothy Donohue.

Edward Hall allowed Donohue to live in Hall's house in a room on the second floor. Hall also allowed Padilla to live in his house in exchange for cleaning the house and caring for his cats. Padilla was dating Cross, who eventually moved in to Hall's house with Padilla. Cross, who also sold drugs, used Hall's house as a base for his drug trafficking.

### 2. Kidnapping and Robbery of Packer

In February 2007, Torres and Packer were hanging out with a group of people in a trailer. After Torres got into an argument with someone, he and Packer left in Packer's car. Once inside the car, Torres pulled out a gun, pointed it at Packer, and told him to drive to Cross' house.

Upon arrival, Torres and Packer went inside. Torres was holding the gun inside his coat and pulled it back out once they were inside. Torres, Packer, and Cross went upstairs, where Padilla was present. Torres gave Cross some duct tape and told him to tie up Packer, which he did. Torres said that Packer was supposed to have obtained an ounce of methamphetamine for someone in Texas. Torres said that once Packer got the methamphetamine, Torres would take it to Texas. Torres forced Packer to make a number of cell phone calls in order to obtain the methamphetamine. While he was holding Packer, Torres took approximately $800 from Packer's wallet. He told Cross and Padilla to go purchase food with Packer's bank card, which they did.

Cross and Padilla convinced Torres to let Packer go, because Packer had to travel to Kansas for a court date and could get

the methamphetamine when he returned. Torres kept Packer's cell phone and other items from Packer's wallet.

Torres was charged with kidnapping, robbery, and two counts of use of a weapon to commit a felony for the kidnapping and robbery of Packer. He was convicted by a jury and sentenced by the court to 25 to 40 years' imprisonment on both the kidnapping and associated weapons convictions and 20 to 30 years' imprisonment on both the robbery and associated weapons convictions, all to be served consecutively.

On his direct appeal in 2008, he alleged only that his sentences were excessive. Torres filed a supplemental pro se brief, alleging that his trial counsel was ineffective. On September 17, 2008, in case No. A-08-131, the Nebraska Court of Appeals summarily affirmed his convictions, but concluded that the record was not sufficient to address Torres' claims of ineffective assistance of counsel on direct appeal.

After his kidnapping and robbery convictions were affirmed, Torres petitioned for postconviction relief. He alleged, among other things, that his counsel was ineffective for failing to call certain witnesses that he believed would have refuted the testimony that he kidnapped Packer. The district court held an evidentiary hearing and denied Torres' postconviction petition, which denial the Court of Appeals affirmed.[2]

### 3. Murders of Hall and Donohue

On March 1, 2007—less than a month after Torres kidnapped Packer—Torres asked Cross if he could stay in Hall's house because he had no other place to stay. Cross was reluctant, but Donohue agreed to let Torres stay in his room. Early the next morning, Cross and Padilla left on a trip to Texas. They did not tell Torres they were going to Texas, because they knew he wanted to go to Texas and also knew that he had a gun. Cross and Padilla's departure left Torres in the house with Hall and Donohue.

---

[2] See *State v. Torres*, No. A-11-1051, 2012 WL 5395345 (Neb. App. Nov. 6, 2012) (selected for posting to court website).

On March 5, 2007, the bodies of Hall and Donohue were found in Hall's house by police after Padilla requested that police conduct a welfare check on the two. Hall's body was found on the first floor of the house, bound by an extension cord in an armchair and gagged with a bathrobe belt. He had three contact gunshot wounds to his head from a small-caliber weapon. His cause of death was determined to be asphyxiation by gagging, suffocation, physical restraint, and multiple deeply penetrating gunshot wounds.

Donohue's body was found upstairs. His cause of death was three gunshot wounds to his head and chest. The shots were fired at close range and were contact or near-contact shots.

Torres' DNA was found on the bathrobe belt used to gag Hall, and he could not be excluded from the DNA sample on the cord used to bind Hall. His DNA was also found on cigarette butts in Donohue's room.

Hall's bank card was used by Torres early in the morning on March 3, 2007. Torres left for Texas in Hall's car, arriving in Houston, Texas, on March 8. Hall's car was later found near where Torres was staying in Texas. It had been burned. Houston law enforcement apprehended Torres on March 26. Torres had Packer's cell phone in his possession when he was arrested.

### 4. Murder Trial

In 2009, Torres was tried and convicted of two counts of first degree murder for the murders of Hall and Donohue, one count of robbery, three counts of use of a deadly weapon to commit a felony, and one count of unauthorized use of a financial transaction device for the use of Hall's bank card. Torres was found guilty by a jury; he waived his right to a jury determination of the aggravating factors at the sentencing phase, choosing to be sentenced by a panel of three judges. The panel found all four of the aggravating factors that were alleged with regard to the murder of Hall and three of the four factors with regard to the murder of Donohue. Torres was sentenced to death on each murder conviction, 50 to 50 years'

imprisonment on each of the robbery and use convictions, and 20 months' to 5 years' imprisonment for the unauthorized use of a financial transaction device conviction.

At Torres' murder trial, the district court admitted evidence about his kidnapping and robbery of Packer, including a part of the bill of exceptions from his kidnapping and robbery trial in which he had been convicted. The district court held that this evidence was admissible under Neb. Evid. R. 404(2), Neb. Rev. Stat. § 27-404(2) (Reissue 2008), "for purposes of motive, intent, plan, knowledge, opportunity, and identity."[3]

## 5. Direct Appeal

On direct appeal of his murder convictions, Torres argued that the district court improperly admitted the evidence of his kidnapping and robbery of Packer under rule 404(2).[4] This court concluded that the district court erred in admitting this evidence to show Torres' intent or opportunity to commit the murders. But we concluded that it was admissible to show his motive. We concluded that the improper admission of this evidence to show intent or opportunity was harmless error and affirmed his convictions and sentences.[5]

## 6. Postconviction Petition and Hearing

In 2013, Torres filed a motion for postconviction relief. The court granted his motion to appoint counsel. Torres was allowed to amend his petition and submit a second amended petition for postconviction relief.

His petition alleged that his trial counsel was ineffective by "fail[ing] to . . . adequately address the [rule] 404 evidence regarding the alleged kidnapping and robbery of . . . Packer, including the failure to present evidence regarding testimony of [three potential witnesses] and a failure to adequately raise

---

[3] See *State v. Torres, supra* note 1, 283 Neb. at 155, 812 N.W.2d at 230.

[4] *State v. Torres, supra* note 1.

[5] *Id.*

issues regarding phone records of . . . Packer's telephone."
Torres claimed that trial counsel was ineffective by "fail[ing]
to adequately raise the issues regarding destruction of evi-
dence, contamination of evidence and the State's failure to
produce evidence," including the handling of crime scene
evidence. He alleged counsel was ineffective in failing to
call an expert witness to testify about the possible evidence
contamination and DNA testing and the release of the crime
scene premises (Hall's house) to Hall's family and its subse-
quent destruction. He claimed counsel failed to obtain sign-in
sheets and surveillance video from the Salvation Army, failed
to argue *State v. Glazebrook*[6] to oppose the use of the rule
404 evidence, and failed to hire a mitigation expert for the
sentencing phase.

Torres alleged that the State had withheld evidence and
had engaged in prosecutorial misconduct by failing to obtain
and preserve the surveillance video from the Salvation Army,
releasing the crime scene to Hall's family and allowing it to
be destroyed, and "[a]ttempt[ing] to extort a guilty plea by
threats of charging and prosecuting [Torres'] mother."

The district court held an evidentiary hearing. The evidence
presented at the hearing included the depositions of Torres'
attorneys, the Hall County Attorney, an expert witness, and
others. Also presented were police reports, cell phone records,
the bill of exceptions from the murder trial, and various
other documents.

The district court denied Torres' petition for postconviction
relief. Torres appealed.

## III. ASSIGNMENTS OF ERROR

Torres claims that the district court erred by determining
that his trial counsel was not ineffective and that the State did
not commit prosecutorial misconduct.

---

[6] *State v. Glazebrook*, 282 Neb. 412, 803 N.W.2d 767 (2011).

## IV. STANDARD OF REVIEW

[1] In an evidentiary hearing on a motion for postconviction relief, the trial judge, as the trier of fact, resolves conflicts in the evidence and questions of fact. An appellate court upholds the trial court's findings unless they are clearly erroneous. In contrast, an appellate court independently resolves questions of law.[7]

[2,3] A claim that defense counsel provided ineffective assistance presents a mixed question of law and fact. When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error.[8] With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*,[9] an appellate court reviews such legal determinations independently of the lower court's decision.[10]

## V. ANALYSIS

Nebraska's postconviction act allows a prisoner to petition a court to vacate or set aside his or her conviction "on the ground that there was a denial or infringement of the rights of the prisoner as to render the judgment void or voidable under the Constitution of this state or the Constitution of the United States."[11]

### 1. Ineffective Assistance of Trial Counsel

[4,5] The Sixth Amendment to the U.S. Constitution provides that "[i]n all criminal prosecutions, the accused shall

---

[7] *State v. Hessler, ante* p. 70, 886 N.W.2d 280 (2016).

[8] *State v. Harris*, 294 Neb. 766, 884 N.W.2d 710 (2016).

[9] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[10] *State v. Hessler, supra* note 7; *State v. Harris, supra* note 8.

[11] Neb. Rev. Stat. § 29-3001(1) (Reissue 2016). See, also, *State v. Dubray*, 294 Neb. 937, 885 N.W.2d 540 (2016).

enjoy the right . . . to have the Assistance of Counsel for his defen[s]e." The right to counsel has been interpreted to include the right to *effective* counsel.[12] Under the standard established by the U.S. Supreme Court in *Strickland v. Washington*, claims of ineffective assistance of counsel by criminal defendants are evaluated using a two-prong analysis: first, whether counsel's performance was deficient and, second, whether the deficient performance was of such a serious nature so as to deprive the defendant of a fair trial.[13] A court may address the two elements of this test, deficient performance and prejudice, in either order.[14]

[6,7] To show that the performance of a prisoner's counsel was deficient, it must be shown that "'counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law . . . .'"[15] To establish the prejudice element of the *Strickland v. Washington* test, a defendant must show that the counsel's deficient performance was of such gravity to "'render[] the result of the trial unreliable or the proceeding fundamentally unfair.'"[16] This prejudice is shown by establishing that but for the deficient performance of counsel, there is a "'reasonable probability'" that the outcome of the case would have been different.[17]

[8-10] When reviewing claims of alleged ineffective assistance of counsel, an appellate court affords trial counsel due deference to formulate trial strategy and tactics.[18] There is a strong presumption that counsel acted reasonably, and an appellate court will not second-guess reasonable strategic

---

[12] *Strickland v. Washington, supra* note 9. See *State v. Dubray, supra* note 11.

[13] *Id.*

[14] *State v. Dubray, supra* note 11.

[15] *Id.* at 950, 885 N.W.2d at 553.

[16] *Id.*

[17] *Id.*

[18] *State v. Parnell*, 294 Neb. 551, 883 N.W.2d 652 (2016).

decisions.[19] The decision to call, or not to call, a particular witness, made by counsel as a matter of trial strategy, even if that choice proves unproductive, will not, without more, sustain a finding of ineffectiveness of counsel.[20]

### (a) Failure to Call Witnesses: Rule 404(2) Evidence of Torres' Kidnapping and Robbery of Packer

Torres claims that his counsel was ineffective by not presenting the testimony of three potential witnesses to refute the evidence of his kidnapping and robbery of Packer, which was admitted under rule 404(2).

Torres' trial counsel explained that the decision not to focus on the kidnapping of Packer was a matter of trial strategy. He explained that "the less talked about the . . . Packer episode, the better. Because my opinion was that the evidence was clear-cut [that] the kidnapping occurred from just too many witnesses." The trial strategy was to focus on the crimes that Torres was charged with, rather than the kidnapping, which was admissible only as rule 404 evidence. Torres' trial counsel explained that he did not want to shift the focus onto the timeline of who had Packer's cell phone at what time. Torres' counsel was also concerned about what testimony might come out on the witness stand if these witnesses were to testify. He did not believe that it was a good trial strategy to call witnesses that may end up bolstering the testimony about the kidnapping and robbery.

The decision not to call these witnesses was a reasonable trial strategy by Torres' trial counsel. As his counsel explained, the evidence for the kidnapping was strong. Calling additional witnesses would have run the risk of bolstering the evidence of the kidnapping and robbery. This

---

[19] *State v. Rocha*, 286 Neb. 256, 836 N.W.2d 774 (2013). See, also, *State v. Parnell, supra* note 18.

[20] *State v. Robinson*, 287 Neb. 606, 843 N.W.2d 672 (2014).

strategy was not unreasonable. The performance of Torres' trial counsel was not deficient, and therefore, this claim of ineffective assistance of counsel was correctly rejected by the district court.

In Torres' postconviction motion following his kidnapping and robbery convictions, he raised his trial counsel's failure to call those same three witnesses, among several others, to testify. On appeal from the denial of postconviction relief, the Court of Appeals concluded that his trial counsel was not ineffective for not calling these witnesses. If Torres' trial counsel was not ineffective for failing to call these witnesses to refute the kidnapping and robbery allegation in his kidnapping and robbery trial, then it follows a fortiori[21] that his counsel was not ineffective in his murder trial by not presenting these witnesses, because the kidnapping was used only as rule 404 evidence to show motive.

Finally, Torres argues that his counsel should have introduced statements of Hall through the testimony of two individuals who had spoken with Hall. This claim was not raised in Torres' second amended petition. An appellate court will not consider an issue on appeal that was not presented to the trial court in the pleadings.[22] This claim regarding the testimony of those witnesses concerning statements made by Hall was not presented to the district court in his petition for postconviction relief, and we will not consider it here.

### (b) Failure to Argue About Withheld or Destroyed Evidence

Torres argues that his trial counsel was ineffective by failing to sufficiently raise the issues of contamination, destruction,

---

[21] See Black's Law Dictionary 72 (10th ed. 2014) ("[b]y even greater force of logic; even more so it follows").

[22] *Cattle Nat. Bank & Trust Co. v. Watson*, 293 Neb. 943, 880 N.W.2d 906 (2016); *Coral Prod. Corp. v. Central Resources*, 273 Neb. 379, 730 N.W.2d 357 (2007); *Central Nebraska Public Power and Irrigation District v. Walston*, 140 Neb. 190, 299 N.W. 609 (1941).

and failure to produce evidence. He argues that his counsel failed to sufficiently question the handling of the evidence by the police. He concedes that his trial counsel did raise issues relating to the handling of evidence at the crime scene, but "believes that his counsel should have done more."[23] He argues that his counsel should have called Dr. Robert Pyatt as an expert witness to "focus on the contamination of the evidence."[24]

Torres' trial counsel testified that he and cocounsel discussed the pros and cons of having Pyatt testify regarding the collection of DNA evidence. They ultimately decided there was not enough of a difference in opinion between Pyatt and the State's expert witness to justify calling Pyatt to testify.

Torres' trial counsel raised the issues of the collection of crime scene evidence and possible contamination on cross-examination of the State's expert witness. Considering the fact that the problems with the collection of evidence were raised by Torres' counsel on cross-examination, we are unable to conclude that counsel was ineffective in not calling Pyatt to testify. Pyatt's testimony would have been cumulative. The decision not to call Pyatt to testify was a reasonable trial strategy. His counsel's performance was not deficient in this regard.

Torres also claims that his counsel was ineffective by failing to raise the issue of "destruction of evidence." Specifically, he raises the fact that shortly after the murders, the crime scene (Hall's house) was released to Hall's estate, which gave the Grand Island Fire Department permission to burn it for training purposes. Torres says that his counsel's failure to go into the house and investigate the crime scene before it was released and burned constituted ineffective assistance of counsel because it inhibited his ability to prove that methamphetamine was being manufactured in the house.

---

[23] Brief for appellant at 14.

[24] *Id.*

Torres' counsel testified that although he was given the opportunity, he chose not to go into the house, because of his concern for his own health and because he believed the photographic and physical evidence taken from the scene was sufficient. This was not an unreasonable decision by Torres' counsel, and it did not constitute deficient performance.

Moreover, it would not have made a difference in the outcome of the case if there were evidence in the residence to show that methamphetamine was being manufactured there. The evidence at trial showed that Cross was using the residence as a base for his drug trafficking. The distinction between whether methamphetamine was being manufactured or merely sold out of the house was immaterial to whether Torres murdered Hall and Donohue.

Torres also claims that his counsel was ineffective in failing to obtain sign-in sheets and surveillance video from the Salvation Army. Torres claims the sign-in sheets and video would have shown that Hall was alive and would have contradicted the State's theory of the time of Hall's death. He claims that not having these sign-in sheets and video rendered him "unable to effectively present a defense."[25]

As to the sign-in sheets, Torres' attorney did obtain the original sheets and sent them to a document examiner to analyze the signatures. The examiner could not determine with certainty whether the signature "Ed" on the relevant date was that of Hall.

As to the surveillance video, Torres states that "[t]he video has been unable to be located and would have been important to compare the time of death with Torres' argument that he did not commit the crime."[26] This claim overlaps with his claim that the State committed prosecutorial misconduct by failing to produce the video. It is not clear whether Torres is blaming his attorneys or the prosecution for the unavailability of the

---

[25] *Id.* at 15.

[26] *Id.*

video. He has not articulated exactly what his counsel did that made this video unable to be located or how this constituted deficient performance on counsel's part. Torres has failed to prove this claim of ineffective assistance of counsel.

### (c) Failure to Use
### Mitigation Specialist

Torres claims that his counsel was ineffective for failing to hire a mitigation specialist to present evidence to the three-judge panel. In the district court hearing, Torres offered an excerpt from the American Bar Association's Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases[27] and also the Supplementary Guidelines for the Mitigation Function of Defense Teams in Death Penalty Cases.[28] Guideline 4.1 states that in a death penalty case, "[t]he defense team should consist of no fewer than two [qualified] attorneys . . . an investigator, and a mitigation specialist."[29]

[11] Under the *Strickland v. Washington* framework for ineffective assistance of counsel claims, a court may address the two elements, deficient performance and prejudice, in either order.[30] We conclude that Torres failed to prove that he suffered any prejudice as a result of his counsel's failure to hire a mitigation specialist.

[12] To prove the prejudice element of his ineffective assistance of counsel claim, a prisoner must prove that his or her counsel's deficient performance was of such gravity to "'render[] the result of the trial unreliable or the proceeding fundamentally unfair,'" by establishing that but for the deficient

---

[27] *ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases*, 31 Hofstra L. Rev. 913 (2003).

[28] *Supplementary Guidelines for the Mitigation Function of Defense Teams in Death Penalty Cases*, 36 Hofstra L. Rev. 677 (2008).

[29] *ABA Guidelines, supra* note 27 at 952.

[30] See *State v. Dubray, supra* note 11.

performance of counsel, there is a "'reasonable probability'" that the outcome of the case would have been different.[31] Torres has not met this burden.

Torres does not explain just what a mitigation specialist would have discovered that his attorneys did not and how that would have made a difference in his sentencing. He argues that "he was prejudiced in his attorneys' failure to present a complete picture of him to the three judge panel."[32]

We have rejected similar claims of ineffective assistance of counsel where prisoners fail to show how a different or more thorough investigation of mitigating evidence would have made a difference in sentencing. In *State v. Hessler*,[33] we said:

Other than his alleged mental incompetence, [the defendant] presented no evidence of mitigating circumstances that counsel should have discovered and presented at his sentencing. We therefore conclude that the district court did not err when it rejected [the defendant's] claim that trial counsel was ineffective for failing to discover and present mitigating evidence at sentencing.

In *State v. Palmer*,[34] we said that "[w]hile [the defendant] asserts that the failure of his counsel to undertake these investigations is ineffective assistance of counsel, [the defendant] does not argue how any of these actions by counsel would have made a difference in [his] sentencing."

In this case, the district court concluded that Torres suffered no prejudice, because the mitigating evidence "would barely have altered the sentence profile presented to the decision maker."

We note that Torres did request that the district court appoint a mitigation specialist to assist him in this postconviction

---

[31] *Id.* at 950, 885 N.W.2d at 553.

[32] Brief for appellant at 20.

[33] *State v. Hessler, supra* note 7, *ante* at 85, 886 N.W.2d at 292.

[34] *State v. Palmer*, 257 Neb. 702, 721, 600 N.W.2d 756, 772 (1999).

case, which the court denied. But Torres has not raised this denial in his assignments of error.

Because Torres has failed to show a reasonable probability that the result of the sentencing would have been different had his counsel retained a mitigation specialist, he suffered no prejudice and cannot prevail on this claim of ineffective assistance of counsel.

Torres argues, however, that we should presume prejudice in this case. Under *State v. Trotter*,[35] "under certain specified circumstances, prejudice to the accused is to be presumed," namely "(1) where the accused is completely denied counsel at a critical stage of the proceedings, (2) where counsel fails to subject the prosecution's case to meaningful adversarial testing, and (3) where the surrounding circumstances may justify a presumption of ineffectiveness without inquiry into counsel's actual performance at trial." Torres argues that the third category of presumed prejudice, based on "the surrounding circumstances," applies in this case where his counsel failed to retain a mitigation specialist.[36] We decline to adopt a presumption of prejudice based on counsel's failure to obtain a mitigation specialist in the sentencing phase of this capital case.

## 2. Prosecutorial Misconduct

Torres alleges that the State engaged in prosecutorial misconduct by failing to obtain and preserve the sign-in sheets and surveillance video from the Salvation Army, by releasing the crime scene to Hall's family and allowing it to be destroyed, by tampering with Packer's cell phone records, and by attempting to "extort" a plea deal from him with threats of prosecuting his mother. We find these allegations to be without merit.

---

[35] *State v. Trotter*, 259 Neb. 212, 218, 609 N.W.2d 33, 38 (2000).

[36] Brief for appellant at 19.

[13] Nebraska's postconviction act allows a prisoner to petition for postconviction relief "on the ground that there was such a denial or infringement of the rights of the prisoner as to render the judgment void or voidable under the Constitution of this state or the Constitution of the United States."[37] Thus, a claim of prosecutorial misconduct may be considered on postconviction only to the extent it constitutes a constitutional violation under the U.S. or Nebraska Constitutions.[38]

[14] Under *Brady v. Maryland*,[39] the nondisclosure by the prosecution of material evidence favorable to the defendant and requested by the defendant violates the Due Process Clause, irrespective of the good faith or bad faith of the prosecution.[40] The Due Process Clause also requires the State to preserve potentially exculpatory evidence on behalf of a defendant in some circumstances.[41] Failure to preserve "'"material exculpatory"'" evidence violates the Due Process Clause, regardless of the good or bad faith of the State, while failure to preserve "'"potentially useful"'" evidence does not violate the Due Process Clause unless done in bad faith.[42]

[15-19] A motion for postconviction relief is not a substitute for an appeal.[43] Therefore, a motion for postconviction relief cannot be used to secure review of issues which were known to the defendant and could have been litigated on direct appeal; such issues are procedurally barred.[44] Whether a claim

---

[37] § 29-3001(1).

[38] See *id.*

[39] *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

[40] See *State v. Parnell, supra* note 18.

[41] *State v. Nelson*, 282 Neb. 767, 807 N.W.2d 769 (2011) (citing *California v. Trombetta*, 467 U.S. 479, 104 S. Ct. 2528, 81 L. Ed. 2d 413 (1984)).

[42] *Id.* at 785, 807 N.W.2d at 784 (citing *Arizona v. Youngblood*, 488 U.S. 51, 109 S. Ct. 333, 102 L. Ed. 2d 281 (1988)).

[43] *State v. McKinney*, 279 Neb. 297, 777 N.W.2d 555 (2010).

[44] See *id.*

of prosecutorial misconduct could have been litigated on direct appeal and is thus procedurally barred from being litigated on postconviction depends on the nature of the claim.[45] Where the claim of prosecutorial misconduct is such that a determination of the merits is possible based on the record on direct appeal, such as statements made in a prosecutor's closing argument,[46] it is procedurally barred from being litigated on postconviction.[47] But where an evidentiary hearing is necessary to decide the merits of the claim, the failure to raise the issue on direct appeal does not preclude it from being litigated on postconviction.[48] Because Torres' claims of prosecutorial misconduct could not have been decided based on the record on direct appeal, they are not procedurally barred, even though they were not raised on direct appeal.

(a) Failure to Produce Evidence:
Salvation Army Sign-in Sheets
and Surveillance Video

Torres claims that the State committed prosecutorial misconduct by failing to produce a surveillance video from the Salvation Army that he claims would have shown Hall had eaten there, proving that he was alive and contradicting the State's timeline for when the murders occurred.

The county attorney testified in his deposition that he did not personally watch the video. The other attorneys in his office in charge of reviewing the evidence did not report seeing Hall in the video. Torres' first attorney testified that he thought he saw the Salvation Army video, but could not recall for sure. Torres' subsequent counsel did not recall anything about the video.

---

[45] See, generally, *State v. Harris*, 267 Neb. 771, 677 N.W.2d 147 (2004).

[46] E.g., *State v. Dubray*, 289 Neb. 208, 854 N.W.2d 584 (2014).

[47] *State v. Harris, supra* note 45.

[48] See *id.*

The district court concluded that "there has been nothing presented to show that evidence existed that was probative concerning a security video from the Salvation Army and review shows Torres'[] counsel explored both of these avenues as possible evidence but it was not present." We conclude that Torres has failed to prove this claim of prosecutorial misconduct. He has not shown that the prosecution failed to turn over the video, nor has he shown that the video would be exculpatory.

Additionally, Torres claims that the State committed prosecutorial misconduct by failing to turn over the original Salvation Army sign-in sheets. This claim is without merit, because Torres' own counsel testified in his deposition that he received copies of the sheets and, when requested, the original sign-in sheets.

### (b) Destruction of Evidence: Hall's House and Packer's Cell Phone Records

Torres claims that the State committed prosecutorial misconduct by releasing the crime scene to Hall's family, after which it was burned in a fire department training exercise. He argues that "[b]y failing to allow the evidence to be preserved, Torres was unable to investigate and then argue that methamphetamine was being manufactured at . . . Hall's residence and [that] this evidence was material to his defense."[49]

First, there is no question about a failure to produce evidence: Torres' counsel was given the opportunity to inspect the house. More importantly, the State was not required to preserve Hall's house after it obtained extensive physical and photographic evidence from the scene. Aside from the practical difficulties of preserving Hall's house for an indefinite period of time for Torres' evidentiary use, the State had no responsibility to preserve the house, because it was not

---

[49] Brief for appellant at 23.

"""material exculpatory,"""" and was, at most, """"potentially useful.""""[50] As discussed above, the evidence at trial showed that Cross was using the residence as a base for his drug trafficking. The distinction between whether methamphetamine was being manufactured or merely sold out of the house is immaterial to whether Torres murdered Hall and Donohue. Absent a showing of bad faith—which Torres has not shown— the State has no burden to preserve evidence that is merely potentially useful.[51]

Torres claims the State "committed misconduct in [its] production of . . . Packer's phone records."[52] Specifically, he alleges that "various phone calls were admitted at trial that were supposed to be from . . . Packer's phone but included calls from others as well as included phone records he never received" and that "the State failed to preserve the texts on . . . Packer's phone."[53] He also claims that the State did not disclose all of the cell phone records based on his claim that the records provided to him differed from those provided to his attorney and that those originally provided to him "did not contain any marks at the top of the documents," but those provided later did have a fax header on them.[54]

Torres has failed to prove that the prosecution altered or deleted any calls on Packer's cell phone records. The only evidence that the State's records were incorrect was Torres' own claim that "he had written down a list of . . . Packer's texts from his phone,"[55] which conflicted with the State's records. Nor has Torres proved that the State engaged in prosecutorial misconduct based on the presence or absence of a fax header

---

[50] See *State v. Nelson, supra* note 41, 282 Neb. at 785, 807 N.W.2d at 784.

[51] See *id.*

[52] Brief for appellant at 23.

[53] *Id.*

[54] *Id.* at 24.

[55] *Id.* at 23.

on the cell phone records provided to him. Torres has failed to prove this claim.

### (c) Attempt to "Extort" Plea

Torres alleges that the State engaged in prosecutorial misconduct by "[a]ttempts to extort a guilty plea by threats of charging and prosecuting [Torres'] mother." The district court correctly concluded that this allegation was frivolous. Torres did not accept any plea offer. This claim is wholly without merit.

### VI. CONCLUSION

Torres has failed to show that his trial counsel was ineffective or that the State engaged in prosecutorial misconduct. We affirm the district court's denial of Torres' motion for postconviction relief.

Affirmed.