Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/28/2017 09:13 AM CST

State of Nebraska, appellee, v.
Herchel Harold Huff, appellant.

___ N.W.2d ___

Filed October 31, 2017.    No. A-16-983.

1. **Postconviction: Constitutional Law: Appeal and Error.** In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief.

2. **Postconviction: Claims.** Whether a claim raised in a postconviction proceeding is procedurally barred is a question of law.

3. **Judgments: Appeal and Error.** When reviewing a question of law, an appellate court resolves the question independently of the lower court's conclusion.

4. **Postconviction: Evidence.** In an evidentiary hearing on a motion for postconviction relief, the trial judge, as the trier of fact, resolves conflicts in the evidence and questions of fact.

5. **Postconviction: Evidence: Appeal and Error.** An appellate court upholds the trial court's findings in an evidentiary hearing on a motion for postconviction relief unless the findings are clearly erroneous.

6. **Judgments: Appeal and Error.** An appellate court independently resolves questions of law.

7. **Effectiveness of Counsel: Appeal and Error.** When a claim of ineffective assistance of counsel presents a mixed question of law and fact, an appellate court reviews the lower court's factual findings for clear error but independently determines whether those facts show counsel's performance was deficient and prejudiced the defendant.

8. **Postconviction: Final Orders.** Within a postconviction proceeding, an order granting an evidentiary hearing on some issues and denying a hearing on others is a final, appealable order as to the claims denied without a hearing.

9. **Postconviction: Time: Appeal and Error.** Pursuant to Neb. Rev. Stat. § 25-1912 (Reissue 2016), a defendant has just 30 days to appeal from the denial of an evidentiary hearing; the failure to do so results in the defendant's losing the right to pursue those allegations further.

10. **Postconviction: Appeal and Error.** A motion for postconviction relief cannot be used to secure review of issues which were known to the defendant and could have been litigated on direct appeal.

11. **Postconviction: Effectiveness of Counsel: Appeal and Error.** To establish a right to postconviction relief based on a claim of ineffective assistance of counsel, the defendant has the burden, in accordance with *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), to show that counsel's performance was deficient; that is, counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. Next, the defendant must show that counsel's deficient performance prejudiced the defense in his or her case.

12. **Effectiveness of Counsel: Proof: Words and Phrases.** To show prejudice under the prejudice component of the test in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different. A reasonable probability does not require that it be more likely than not that the deficient performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine confidence in the outcome.

13. **Effectiveness of Counsel.** The two prongs of the test in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), deficient performance and prejudice, may be addressed in either order.

14. **Constitutional Law: Criminal Law: Trial: Witnesses.** The Confrontation Clause of the Sixth Amendment to the U.S. Constitution provides that in all criminal prosecutions, the accused shall enjoy the right to be confronted with the witnesses against him or her. The 14th Amendment makes the guarantees of this clause obligatory upon the states.

15. **Constitutional Law: Trial: Witnesses.** The Confrontation Clause guarantees the accused's right to be present in the courtroom at every stage of his or her trial.

16. **Trial: Due Process.** The general rule is that an accused has a right to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings.

17. **Trial: Due Process: Waiver.** A defendant has a right to be present at all times when any proceeding is taken during the trial, from impaneling of

the jury to the rendition of the verdict, inclusive, unless he has waived such right.

18. **Trial: Waiver.** If a defendant is to effectively waive his or her presence at trial, that waiver must be knowing and voluntary.

19. **Constitutional Law: Juror Qualifications.** Voir dire plays a critical function in assuring a criminal defendant that his or her constitutional right to an impartial jury will be honored.

20. **Trial: Attorneys at Law: Effectiveness of Counsel: Appeal and Error.** When reviewing claims of alleged ineffective assistance of counsel, an appellate court affords trial counsel due deference to formulate trial strategy and tactics.

21. **Effectiveness of Counsel: Presumptions: Appeal and Error.** There is a strong presumption that counsel acted reasonably, and an appellate court will not second-guess reasonable strategic decisions.

22. **Effectiveness of Counsel: Judgments: Appeal and Error.** Even if found unreasonable, error owing to ineffective assistance of counsel justifies setting aside the judgment only if there was prejudice.

Appeal from the District Court for Furnas County: James E. Doyle IV, Judge. Affirmed.

Brian J. Davis, of Berreckman & Davis, P.C., for appellant.

Douglas J. Peterson, Attorney General, and Erin E. Tangeman for appellee.

Moore, Chief Judge, and Bishop and Arterburn, Judges.

Moore, Chief Judge.

## I. INTRODUCTION

Herchel Harold Huff was convicted of motor vehicle homicide, among other charges, in connection with the death of Kasey Jo Warner. Following his direct appeals, Huff filed a motion for postconviction relief in the district court for Furnas County. Following an initial review of Huff's motion, the court dismissed a number of Huff's claims without an evidentiary hearing. Huff appealed, and this court affirmed the dismissal of those claims. Subsequently, the State filed a motion to dismiss the remainder of Huff's postconviction claims. The court sustained the motion in part and overruled it in part. Huff again appealed, and this court affirmed. An evidentiary

hearing was held on Huff's remaining postconviction claims as well as a motion to disqualify or recuse the judge hearing his postconviction motion. The present appeal arises from the district court's order denying the remaining claims in Huff's postconviction motion following an evidentiary hearing. Huff asserts both ineffective assistance of counsel and trial court error in connection with the in-chambers voir dire of certain jurors conducted outside of his presence. Huff's first assigned error is not properly before us in this appeal, and he has not shown that he was prejudiced by his counsel's actions in connection with the in-chambers voir dire. Accordingly, we affirm.

## II. BACKGROUND

### 1. Trial and Direct Appeals

On October 3, 2007, Warner was jogging on a gravel road near her home in Furnas County when she was struck and killed by a vehicle driven by Huff. Huff pled guilty to manslaughter, but not guilty to the other crimes with which he was charged. A jury trial was held, and the jury found Huff guilty of motor vehicle homicide. The district court found Huff guilty of the remaining counts (tampering with a witness and refusal to submit to a chemical test). Huff was sentenced to imprisonment for a term of 45 to 45 years for motor vehicle homicide and a concurrent term of 20 to 20 years for manslaughter. Huff was sentenced to imprisonment for 20 to 60 months for tampering with a witness and 5 to 5 years for third-offense refusal to submit to a chemical test. These sentences were to be served consecutively to the sentences for manslaughter and motor vehicle homicide and to one another. Huff filed a direct appeal and was represented on direct appeal by his trial attorneys. The Supreme Court affirmed Huff's convictions for motor vehicle homicide, tampering with a witness, and refusal to submit to a chemical test, but it remanded the cause for sentencing on the third-offense refusal to submit to a chemical test. The Supreme Court also vacated Huff's conviction and

sentence for manslaughter. See *State v. Huff*, 282 Neb. 78, 802 N.W.2d 77 (2011).

After remand, Huff was resentenced on the refusal to take a chemical test to 60 days' incarceration, a $500 fine, and the suspension of his license for 6 months after his release from incarceration. Huff appealed this sentence, and the Nebraska Supreme Court summarily affirmed. *State v. Huff*, 283 Neb. xix (No. S-11-1102, Apr. 11, 2012). Huff was represented by his trial attorneys in this appeal as well.

## 2. Postconviction Motion

On August 20, 2012, Huff filed a verified motion for postconviction relief, alleging numerous claims of ineffective assistance of counsel, prosecutorial misconduct, trial court error, law enforcement misconduct, and denial of his right to appellate counsel, and he requested an evidentiary hearing.

## 3. First Postconviction Appeal

On October 22, 2012, the district court entered an order denying certain of Huff's claims and granting him an evidentiary hearing on others. The court appointed postconviction counsel for Huff. Huff appealed from the order dismissing portions of his postconviction claims. In that appeal, Huff challenged the court's dismissal of two of his claims of ineffective assistance of trial counsel without an evidentiary hearing. In a memorandum opinion, this court affirmed. See *State v. Huff*, No. A-12-1072, 2013 WL 6622896 (Neb. App. Dec. 17, 2013) (selected for posting to court website).

## 4. Second Postconviction Appeal

Following the first postconviction appeal, the State filed a motion to dismiss Huff's remaining postconviction claims. On October 1, 2014, the district court entered an order granting in part and denying in part the State's motion to dismiss. The court detailed the remaining claims for postconviction relief and found that the remaining claims under "[g]rounds 2, 3, and 4" set forth in Huff's motion constituted claims of ineffective

assistance of counsel and were "considered by the court to be preserved through, and to be part of, Huff's ineffective assistance of counsel claims set forth in [g]round 1." To the extent that the court's description of and prior characterization of grounds 2 through 4 "create[d] a different impression, or g[a]ve rise to inferences that the claims can be classified as other than ineffective assistance of counsel claims," the court granted the State's motion to dismiss. The court dismissed additional claims for relief asserted in Huff's postconviction motion and denied the State's motion as to other claims. Huff again appealed, asserting that the court erred when it sustained the State's motion to dismiss in part, denying two additional claims of ineffective assistance of counsel without an evidentiary hearing. In an unpublished memorandum opinion, this court affirmed the dismissal of the additional claims from Huff's postconviction motion. *State v. Huff*, 22 Neb. App. xxxii (No. A-14-985, June 26, 2015).

5. Evidentiary Hearing

On May 26, 2016, an evidentiary hearing was held on the remaining claims in Huff's postconviction motion. The district court received exhibits including the bill of exceptions from Huff's trial, various depositions and affidavits, and certain pleadings. We have set forth the evidence relevant to Huff's assignments of error in the present appeal, focusing on the voir dire of certain prospective jurors in the court's chambers outside of Huff's presence.

(a) Voir Dire Proceedings

The record shows that voir dire took place on March 9, 2010, and that Huff was present in the courtroom during the voir dire proceedings. During voir dire, the trial judge asked the panel if anyone had ever been arrested for, cited for, or convicted of driving while under the influence of alcohol (DUI). In response, six prospective jurors (jurors Nos. 52, 73, 95, 96, 106, and 139) raised their hands. The judge then

asked the six prospective jurors a series of questions to see if anything about their experience would affect their ability to be fair and impartial. None of the six prospective jurors indicated that they could not be fair and impartial. We note that jurors Nos. 52 and 96 were later excused for cause for other reasons based upon additional in-court questioning and were not among those prospective jurors later questioned in the court's chambers. When selected from the pool after other prospective jurors were excused, both juror No. 91 and juror No. 102 also informed the court of prior DUI convictions. Upon in-court questioning by the judge, they both indicated that they could be fair and impartial.

The attorneys for both sides also conducted in-court questioning of prospective jurors, and Huff was present for this questioning. During the prosecutor's questioning, jurors Nos. 29, 73, 91, 95, 102, 106, and 139 raised their hands to indicate that they had prior DUI convictions. After Huff's counsel questioned the prospective jurors, the judge confirmed that the State wanted to individually question some of the prospective jurors in chambers.

During a sidebar discussion between the district court and counsel for both parties, one of the prosecuting attorneys informed the court that the State wanted more details from the seven prospective jurors who had prior DUI convictions "about how long ago it was" and "what the treatment was" and to "[g]et the personal details out." Upon the court's inquiry, Huff's attorneys indicated they had no objections to such individual questioning of the seven prospective jurors in chambers. Following the sidebar, the court informed the prospective jurors that the attorneys wanted to ask some questions of certain individual jurors in private "to spare any kind of embarrassment to anyone." The court stated that the questioning would occur in a separate room with the attorneys and court reporter present and that each of the seven identified prospective jurors would be called back separately to answer questions outside the presence of the other prospective jurors.

Huff did not express any desire on the record to be present during the in-chambers questioning.

The in-chambers voir dire began at 11:45 a.m. on March 9, 2010. The district court noted the presence of the attorneys for both Huff and the State for the in-chambers voir dire. Neither the court nor the attorneys mentioned Huff's absence, but a notation from the court reporter in the bill of exceptions shows that Huff was not present for the in-chambers voir dire. The seven prospective jurors were then questioned individually about the circumstances of their past DUI convictions. Six of the seven prospective jurors (jurors Nos. 29, 91, 95, 102, 106, and 139) stated that they could set aside their prior convictions and decide Huff's case based on the facts presented to them. However, juror No. 73 was excused for cause during the in-chambers questioning after stating a belief that Huff was guilty. After the seven prospective jurors had been questioned, Huff's attorneys suggested that the court call the next prospective juror from the pool into chambers for questioning in case that individual also had a prior DUI conviction. As the State had no objections, the judge told the attorneys he would ask the clerk to "pull another name" and would then bring that individual into the conference room. After the clerk selected prospective juror No. 48, that person was individually questioned in chambers by the judge and the attorneys for both parties. Juror No. 48 did not have any prior DUI convictions.

After the in-chambers voir dire concluded at 12:19 p.m. on March 9, 2010, the judge and all counsel returned to the courtroom, where Huff was still present. The State and the defense both passed the jury for cause. After the parties exercised their peremptory strikes, the court clerk read the names of those persons who were excused and the judge thanked them for their service. The bill of exceptions shows only which jurors were eliminated via peremptory strikes and does not show which jurors were removed by the State and

which were removed by the defense. Of the eight jurors who were individually questioned in chambers, only jurors Nos. 95 and 106 were selected as members of the jury. Juror No. 91 was selected as the alternate juror but did not participate in deliberations.

### (b) Depositions of Huff's Trial Counsel

At the evidentiary hearing, the district court received the depositions of both of Huff's trial attorneys. We have referred to them as "the first attorney" and "the second attorney" based on the order in which they were appointed to represent Huff. The second attorney did not recall who made the request to conduct the individual in-chambers voir dire of prospective jurors with prior DUI's, but testified that the decision to do so was made to avoid embarrassing those individuals in front of the other prospective jurors. He testified that he did not ask for Huff to be present for those individual interviews or waive Huff's presence in any way and that the trial judge did not ask if he was willing to waive Huff's presence. When asked if he thought "anything of that at the time," he responded that he made the tactical decision not to say anything because he "thought that if things went badly, . . . the fact that [Huff] wasn't present would have been a good issue on appeal if he was convicted." The second attorney stated that the issue of Huff's absence during the in-chambers voir dire was not raised on direct appeal because after researching the issue, he and the first attorney determined that the claim would not be successful.

The second attorney recalled that he spoke with Huff briefly after the in-chambers voir dire and prior to exercising peremptory strikes and that he informed Huff the defense "didn't want to have any of [the prospective jurors questioned in chambers] on the panel because they were not favorable to him." Both of Huff's trial attorneys testified in their

depositions that Huff did not provide any input when it came to deciding which prospective jurors the defense wanted on the jury and which ones the defense wanted to strike.

The first attorney testified about the extent of Huff's involvement in the overall voir dire process. The first attorney recalled that he and the second attorney went through the list of potential jurors with Huff prior to trial to see if Huff recognized any of the names, which Huff did not. He stated that they would have also told Huff to let them know if he recognized anyone on the panel once voir dire began. The first attorney recalled that Huff did not know any of the jurors, and he did not remember Huff's commenting "either way" with respect to keeping or striking specific jurors.

### (c) Huff's Deposition and Affidavit

At the evidentiary hearing, the district court also received Huff's deposition and an affidavit from Huff prepared after the deposition was taken.

In his deposition, Huff acknowledged that prior to trial, his attorneys briefly explained the voir dire process and went through the list of potential jurors with him. He had been provided the list ahead of time and informed by his attorneys that they wanted to know if he knew any of the individuals or anything about them. Huff testified that he was better at remembering faces than names and that he wished he had been provided with pictures of the individuals or a map of their listed addresses to aid him in determining whether he knew anything about them.

With respect to the in-chambers voir dire, Huff testified he would have liked to have been present because he "had a right to be in that room" and "had a right to know what they were talking about and why they were dismissing people without [his] being present." Huff testified that following the in-chambers voir dire, his attorneys did not discuss the questions asked or answers provided by the prospective jurors

during the individual questioning and that there was not time
to discuss "why they were going to make any decision" with
respect to particular jurors. He testified, "[I]f I would have
known what was going on in there, I would have had the abil-
ity to maybe help in my case." Huff had not seen the record
of the in-chambers voir dire at that point, and he testified that
if shown the record, he thought he might be able to be more
specific about input he could have provided.

According to Huff, his attorneys did not discuss with him
the reason why any jurors were or were not being dismissed
prior to exercising the peremptory strikes. He testified that he
felt if he had been present for and able to provide input during
the in-chambers voir dire, it could have affected the outcome
of his trial. Huff explained:

> Well, one of [those] jurors may have been . . . the person
> that could have [given] me an unbiased trial. They could
> have had the ability to give me freedom. In the same
> sense, they could have had the sense to find me guilty,
> they could have found me not guilty. . . . I'll never know
> because I wasn't in the room with them. I'll have no abil-
> ity to defend myself or help myself because I don't know
> what went on.

Huff testified that the second attorney informed him following
the in-chambers voir dire that the attorney needed to research
the issue of Huff's absence.

In the affidavit, Huff indicated that he had recently
reviewed the portion of the bill of exceptions from his trial
that recorded voir dire. Huff stated that if his trial attorneys
had "demanded [his] presence, [he] would have been able to
see the faces of the jurors that were being questioned, observe
their body language, posture, and demeanor while they were
being questioned, and provide[] input on whether [he] thought
they were being honest" and "whether [he] thought they
would be good jurors on [his] case." Huff stated:

> To show how important the process was, 4 out of the 7
> jurors questioned while I was not present were stricken.

One by the Judge and 3 by my own attorneys. In review-
ing the record, I don't know why [juror No.] 102 was
stricken by my attorneys and I think [juror No.] 91
should have been stricken. I can't provide any details into
why those decisions were made because I wasn't pres-
ent to observe anything about the jurors while they were
being questioned.

He stated further:

This clearly could have affected the outcome of my case
had I wanted to strike different jurors or keep different
jurors after hearing and observing the relevant informa-
tion they were providing. How jurors felt about their own
DUI's was probably the most important information they
could provide, and my lawyers purposely did not allow
me to be present during the process.

Huff did not provide any specific reasons as to why he believed
juror No. 102 would have made a good juror or why juror No.
91 should have been stricken.

### 6. Order Denying
#### Postconviction Relief

On September 1, 2016, the district court entered an order
denying postconviction relief. As relevant to Huff's claim that
he received ineffective assistance of trial counsel in connec-
tion with the in-chambers voir dire of eight potential jurors
outside of Huff's presence, the court found that Huff's absence
was inadvertent and that Huff could not establish prejudice.
The court also rejected Huff's argument that he did not have
to establish actual prejudice. Huff subsequently perfected the
present appeal.

## III. ASSIGNMENTS OF ERROR

Huff asserts that the district court erred in (1) denying his
claim that the court violated his constitutional rights by allow-
ing voir dire of prospective jurors to proceed in chambers
outside of Huff's presence and (2) denying his claim that his

trial attorneys were ineffective in not objecting or moving for a mistrial following the voir dire of prospective jurors in chambers outside of Huff's presence.

## IV. STANDARD OF REVIEW

[1-3] In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief. *State v. Ross*, 296 Neb. 923, 899 N.W.2d 209 (2017). Whether a claim raised in a postconviction proceeding is procedurally barred is a question of law. *Id.* When reviewing a question of law, an appellate court resolves the question independently of the lower court's conclusion. *Id.*

[4-6] In an evidentiary hearing on a motion for postconviction relief, the trial judge, as the trier of fact, resolves conflicts in the evidence and questions of fact. *State v. Alarcon-Chavez*, 295 Neb. 1014, 893 N.W.2d 706 (2017). An appellate court upholds the trial court's findings in an evidentiary hearing on a motion for postconviction relief unless the findings are clearly erroneous. *Id.* An appellate court independently resolves questions of law. *Id.*

[7] When a claim of ineffective assistance of counsel presents a mixed question of law and fact, an appellate court reviews the lower court's factual findings for clear error but independently determines whether those facts show counsel's performance was deficient and prejudiced the defendant. *State v. Harris*, 296 Neb. 317, 893 N.W.2d 440 (2017).

## V. ANALYSIS

### 1. Claim of Trial Court Error

Huff asserts that the district court erred in denying his claim that the court violated his constitutional rights by allowing voir dire of prospective jurors to proceed in chambers outside of his presence. This claim, found in subparagraph E of ground

3 of Huff's motion, was previously dismissed by the court in its order of October 1, 2014, ruling on the State's motion to dismiss and is not properly before this court in Huff's present appeal.

In its October 2014 order, the district court determined that this claim and the other remaining claims under "[g]rounds 2, 3, and 4" of Huff's postconviction motion all constituted claims of ineffective assistance of counsel. The court denied the State's motion to dismiss in that regard, but it granted the motion to the extent those claims could be "construed or interpreted to be claims for any relief grounded on any theory or basis other than ineffective assistance of counsel." In other words, to the extent that Huff's claims under grounds 2, 3, and 4 of his motion could be interpreted as claims of prosecutorial misconduct, trial court error, or law enforcement misconduct, the court dismissed those claims for reasons including that they were known to Huff and could have been litigated on direct appeal and were thus procedurally barred.

[8,9] Within a postconviction proceeding, an order granting an evidentiary hearing on some issues and denying a hearing on others is a final, appealable order as to the claims denied without a hearing. *State v. Determan*, 292 Neb. 557, 873 N.W.2d 390 (2016). Pursuant to Neb. Rev. Stat. § 25-1912 (Reissue 2016), a defendant has just 30 days to appeal from the denial of an evidentiary hearing; the failure to do so results in the defendant's losing the right to pursue those allegations further. *State v. Determan, supra*. While Huff did perfect a timely appeal from the district court's October 2014 order, he did not assign error to the court's dismissal of his claim in subparagraph E of ground 3 to the extent the claim could be construed as one of trial court error. Thus, Huff has waived the right to pursue further his allegations of trial court error in connection with the in-chambers voir dire.

[10] Even if Huff had not waived the claim raised in his first assignment of error, the district court was correct in finding in its October 2014 order that any claim of trial court

error in connection with the in-chambers voir dire was proce-durally barred because it was known to Huff at the time of his trial and could have been litigated on direct appeal. A motion for postconviction relief cannot be used to secure review of issues which were known to the defendant and could have been litigated on direct appeal. *State v. Alarcon-Chavez*, 295 Neb. 1014, 893 N.W.2d 706 (2017).

Huff's first assignment of error is without merit. However, we address his arguments below to the extent that they are applicable to his claim of ineffective assistance of counsel.

## 2. Claim of Ineffective Assistance of Counsel

Huff asserts that the district court erred in denying his claim that his trial attorneys were ineffective in not objecting or mov-ing for a mistrial following the voir dire of prospective jurors in chambers outside of Huff's presence.

[11-13] To establish a right to postconviction relief based on a claim of ineffective assistance of counsel, the defendant has the burden, in accordance with *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), to show that counsel's performance was deficient; that is, coun-sel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *State v. Ross*, 296 Neb. 923, 899 N.W.2d 209 (2017). Next, the defendant must show that counsel's deficient performance prejudiced the defense in his or her case. *Id.* To show prejudice under the prejudice com-ponent of the *Strickland* test, the defendant must demonstrate a reasonable probability that but for his or her counsel's defi-cient performance, the result of the proceeding would have been different. *State v. Watson*, 295 Neb. 802, 891 N.W.2d 322 (2017). A reasonable probability does not require that it be more likely than not that the deficient performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine confidence in the outcome. *Id.* The two prongs of this test, deficient performance and

prejudice, may be addressed in either order. *State v. Alarcon-Chavez, supra*.

[14-18] The Confrontation Clause of the Sixth Amendment to the U.S. Constitution provides that in all criminal prosecutions, the accused shall enjoy the right to be confronted with the witnesses against him or her. *State v. Fox*, 282 Neb. 957, 806 N.W.2d 883 (2011). The 14th Amendment makes the guarantees of this clause obligatory upon the states. *State v. Fox, supra.* The Confrontation Clause guarantees the accused's right to be present in the courtroom at every stage of his or her trial. *State v. Fox, supra.* The 5th and 14th Amendments to the U.S. Constitution and article I, § 3, of the Nebraska Constitution guarantee the right to due process of law. Article I, § 11, of the Nebraska Constitution further guarantees an accused individual the right to appear at his or her trial. Pursuant to Neb. Rev. Stat. § 29-2001 (Reissue 2016), "[n]o person indicted for a felony shall be tried unless personally present during the trial." The general rule is that an accused has a right to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings. *State v. Red Kettle*, 239 Neb. 317, 476 N.W.2d 220 (1991). The Nebraska Supreme Court has stated that a "defendant has a right to be present at all times when any proceeding is taken during the trial, from the impaneling of the jury to the rendition of the verdict, inclusive, unless he has waived such right." *Scott v. State*, 113 Neb. 657, 659, 204 N.W. 381 (1925). If a defendant is to effectively waive his or her presence at trial, that waiver must be knowing and voluntary. *State v. Fox, supra*.

The U.S. Supreme Court has assumed that "even in situations where the defendant is not actually confronting witnesses or evidence against him, he has a due process right 'to be present in his own person whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge.'" *Kentucky v. Stincer*, 482 U.S. 730, 745, 107 S. Ct. 2658, 96 L. Ed. 2d 631 (1987), quoting *Snyder v. Massachusetts*, 291 U.S. 97, 54 S. Ct. 330, 78 L. Ed. 674

(1934), *overruled in part on other grounds, Malloy v. Hogan*, 378 U.S. 1, 84 S. Ct. 1489, 12 L. Ed. 2d 653 (1964). Referring to voir dire, the Supreme Court has noted that

> defense may be made easier if the accused is permitted to be present at the examination of jurors or the summing up of counsel, for it will be in his power, if present, to give advice or suggestion or even to supersede his lawyers altogether and conduct the trial himself.

*Snyder v. Massachusetts*, 291 U.S. at 106. In further considering the right, the Supreme Court stated, "Nowhere in the decisions of this court is there a dictum, and still less a ruling, that the Fourteenth Amendment assures the privilege of presence when presence would be useless, or the benefit but a shadow." *Snyder v. Massachusetts*, 291 U.S. at 106-07. A due process right to be present is not absolute; rather, "the presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence." *Id.*, 291 U.S. at 107-08. See, also, *State v. Marks*, 286 Neb. 166, 835 N.W.2d 656 (2013).

[19] Voir dire plays a critical function in assuring the criminal defendant that his or her constitutional right to an impartial jury will be honored. *State v. Iromuanya*, 282 Neb. 798, 806 N.W.2d 404 (2011). Clearly, it was important for Huff to have the opportunity to be present and participate in the jury selection process. Huff was present for the portion of the voir dire proceedings that occurred in the courtroom. He also was given a list of the potential jurors and had the opportunity to consult with his attorneys about the voir dire process prior to trial. His attorneys told him to let them know if he recognized anyone on the panel once voir dire began. The in-chambers questioning was directed to the ability of seven prospective jurors to be impartial given their prior DUI convictions. The responses of six of those prospective jurors indicated that they could be fair and impartial. The seventh juror, who stated a belief that Huff was guilty, was dismissed for cause during the in-chambers questioning. The additional prospective juror

selected from the pool and questioned in chambers did not have a prior DUI conviction. Huff's attorneys were present for the in-chambers questioning, which lasted a little more than 30 minutes. At least one of Huff's attorneys spoke with him briefly after the in-chambers voir dire and prior to the parties' exercise of their peremptory strikes. Huff did not provide any input with respect to exercising the defense's peremptory strikes. He was present during this process and for the selection and swearing of the 12 jurors and 1 alternate juror.

In determining that Huff had the burden to prove actual prejudice from his absence during the in-chambers voir dire, i.e., that his absence adversely affected the outcome of the trial, the district court relied on *U.S. v. Tipton*, 90 F.3d 861, 875 (4th Cir. 1996), which held:

> Where absence [from voir dire] has not been total but only intermittent during the process the courts accordingly have not presumed prejudice but have analyzed the circumstances to determine whether prejudice has been specifically established. *See, e.g., United States v. Bascaro*, 742 F.2d 1335, 1349-50 (11th Cir.1984) (although peremptory strike phase of voir dire is critical, no prejudice to defendants where attorneys conferred about peremptories outside their presence, but defendants were present both while questioning took place and when strikes actually entered); *United States v. Alessandrello*, 637 F.2d 131, 137-141 (3d Cir.1980) (absence of defendants from in-chambers questioning of venirepersons respecting pre-trial publicity not prejudicial in view of their presence at substantial part of voir dire and their counsels' presence during in-chambers proceedings).

[20-22] When reviewing claims of alleged ineffective assistance of counsel, an appellate court affords trial counsel due deference to formulate trial strategy and tactics. *State v. Torres*, 295 Neb. 830, 894 N.W.2d 191 (2017). There is a strong presumption that counsel acted reasonably, and an appellate court will not second-guess reasonable strategic decisions. *Id.*

Even if found unreasonable, the error justifies setting aside the judgment only if there was prejudice. See *State v. Duncan*, 293 Neb. 359, 377, 878 N.W.2d 363, 377 (2016). We are not convinced that Huff's trial attorneys were deficient under the circumstances of this case, but even assuming that they were deficient in failing to object to his absence from the in-chambers voir dire of the prospective jurors who indicated that they had prior DUI convictions (and the prospective juror selected after juror No. 73 was struck for cause), Huff cannot demonstrate a reasonable probability that but for his counsel's deficient performance, the result of the proceeding would have been different.

Huff argues that his attorneys' failure in this case was presumptively prejudicial. We disagree.

Pursuant to [*United States v.*] *Cronic*, [466 U.S. 648, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984),] under certain specified circumstances, prejudice to the accused is to be presumed. The text of *Cronic* lists the following three circumstances in which prejudice will be presumed: (1) where the accused is completely denied counsel at a critical stage of the proceedings, (2) where counsel fails to subject the prosecution's case to meaningful adversarial testing, and (3) where the surrounding circumstances may justify a presumption of ineffectiveness without inquiry into counsel's actual performance at trial.

*State v. Trotter*, 259 Neb. 212, 218, 609 N.W.2d 33, 38 (2000). Clearly, the first two circumstances are not applicable here, and, as discussed above, Huff has not shown that the surrounding circumstances of this case justify a presumption of prejudice.

Huff cannot show a reasonable probability that but for his attorneys' alleged deficient performance, the result of the proceeding would have been different. Of the prospective jurors who were questioned in chambers, only jurors Nos. 95 and 106 served on the jury and participated in deliberations. Huff complains about only two of the prospective jurors that were

questioned individually—jurors Nos. 102 and 91. Juror No. 102 was stricken from the jury by either the State or defense counsel during the exercise of peremptory strikes, and juror No. 91 was the alternate juror and was dismissed prior to deliberations. The record does not conclusively show which of the prospective jurors at issue were stricken via the defense's peremptory strikes. Huff is not guaranteed a jury comprising particular jurors, only a jury that is fair and impartial. See, *Kloss v. United States*, 77 F.2d 462 (8th Cir. 1935); *Hartzell v. United States*, 72 F.2d 569 (8th Cir. 1934). Huff does not allege that any of the jurors who were selected and deliberated on his case were biased. Nor does he explain why he thought prospective juror No. 102 would have made a good juror. Although Huff did not hear that individual's responses during the in-chambers questioning, he heard the responses of and had the opportunity to observe all of the jurors, with the exception of juror No. 48, who was questioned only in chambers, during the in-court questioning. One of the parties exercised a peremptory strike against juror No. 48, and, as noted above, Huff does not have the right to have a jury comprising particular individuals. Huff has not shown and the record does not demonstrate that a juror with actual bias sat in judgment. Because Huff cannot show a reasonable probability that but for his counsel's alleged deficient performance, the result of the proceeding would have been different, his second assignment of error is without merit.

## VI. CONCLUSION

The district court did not err in denying postconviction relief following Huff's evidentiary hearing.

AFFIRMED.